[Crim. No. 187. First Appellate District.—October 25, 1909.]

In the Matter of FRANK O'SHEA, on Habeas Corpus.

HABEAS CORPUS—IMPRISONMENT UNDER CHARGE OF FELONY—VIOLATION OF "RACETRACK BILL"—ALTERNATIVE MISDEMEANOR.—One who is imprisoned under a complaint charging him with a felony for violation of section 353a of the Penal Code, commonly called the "Racetrack" bill, which makes the offense either a felony or a misdemeanor, by providing punishment by imprisonment in the county jail or in the state prison for a period of not less than thirty days and not exceeding one year, is not entitled to be discharged upon *habeas corpus*, where the complaint clearly states an offense under that section.

ID.—POLICY OF LAW—PROVINCE OF COURT.—It is not the province of
the court to deal with the policy of the law, as that belongs ex-
clusively to the legislature, which within the limits imposed by the
constitution is vested with the right to voice the will of the people
in public enactments, and is ordinarily the judge of the expediency
of creating new crimes, and of prescribing penalties for them, light
or severe.

ID.—QUESTION OF CONSTITUTIONALITY.—The courts can only inquire as
to whether or not the legislature has violated the constitution; but
in passing upon that question much is left to the discretion and
judgment of the legislature, and it will be presumed that such dis-
cretion has been wisely and justly exercised, and the law will not
be held unconstitutional unless it is clearly in violation of the fun-
damental law.

ID.—SUPPRESSION OF GAMBLING.—Gambling in its many forms may be
rightfully suppressed by the legislature, and that question is no
longer open to discussion.

ID.—ACT NOT A DELEGATION OF LEGISLATIVE POWER.—The act authoriz-
ing the trial judge to make the crime a felony or a misdemeanor is
not an attempt to delegate legislative power in violation of section
1 of article III of the constitution of the state.

ID.—EFFECT OF CODE SECTION—CRIME FIXED BY LEGISLATURE—MINI-
MUM AND MAXIMUM PUNISHMENT.—The code section enumerates
the various acts which are prohibited and made criminal by the
express will of the legislature. It prescribes what the law shall be
in future cases arising under it, and does not attempt to make the
question as to whether or not the act prohibited shall be a crime
dependent on the will of the court or judge. It states the mini-
mum and maximum punishment. The court cannot make it less or
greater than the statute prescribes. The trial judge is merely se-
lected as the agent of the people, whereby mercy or severity may
be shown as the circumstances connected with the offense may
demand. This is in harmony with the legislative will in regard
to most crimes in prescribing a minimum and maximum pen-
alty; and the permitted discretion of the court in affixing the
penalty has never been considered a delegation of legislative power.

ID.—CRIME CLASSIFIED BY PUNISHMENT.—The same offense may consti-
tute a felony or misdemeanor according to the minimum and maxi-
mum punishment affixed. In so far as it authorizes imprisonment
in the county jail it is a misdemeanor, and in so far as it authorizes
punishment for one year in the state prison it is a felony. The
complaint may charge the case as a felony. But after judgment
affixing the penalty of a misdemeanor, it must be deemed a mis-
demeanor for all purposes.

ID.—CRUEL AND UNUSUAL PUNISHMENTS NOT IMPOSED.—The code section
in question does not violate section 6 of article I of the constitu-

tion forbidding cruel and unusual punishments. Imprisonment in the county jail or in the state prison is not unusual nor cruel in the sense of the constitution. Cruel and unusual punishments are punishments of a barbarous character unknown to the common law, being such as disgraced the civilization of former ages and made one shudder with horror to read of them.

ID.—SUFFICIENCY OF COMPLAINT—COMPLICATED ENUMERATION OF OTHER ACTS IMMATERIAL.—Where acts charged in the complaint are clearly within the prohibition of the code section, and any person of common understanding would, by reading the section and reading the complaint, know that defendant was charged with acts prohibited by the section, it is sufficient, and the objection that the section is too complicated in its enumeration of offenses cannot be considered.

ID.—CONSTRUCTION OF PENAL CODE.—Under section 4 of the Penal Code it is provided that its provisions must be construed according to the fair import of their terms with a view to effecting their object, and promoting justice.

PETITION for discharge upon writ of *habeas corpus* to test the validity of section 353a of the Penal Code.

The facts are stated in the opinion of the court.

Carroll Cook, and Henry Ach, for Petitioner.

U. S. Webb, Attorney General, and Raymond Benjamin, Deputy Attorney General, for Respondent.

COOPER, P. J.—Petitioner seeks to be discharged from imprisonment under a complaint charging him with violating section 337a of the Penal Code, commonly called the "Racetrack bill." The charge is that he committed the crime of a felony on the fifth day of July, 1909, in this, that he "did willfully and unlawfully engage in poolselling and bookmaking, and record and register a certain bet and wager and sell pools upon the result of a certain trial and contest of skill, to wit, dogs, at and upon those certain grounds known as Ingleside Coursing Park, situate on Ocean avenue near Lee street in the city and county of San Francisco and within the state of California, contrary to the form, force and effect of the statute in such case made and provided and against the peace and dignity of the people of the state of California."

The section is entitled, "Poolselling, bookmaking, bets and wagers. Penalty," and so far as material to the case at bar

reads as follows: "Every person who engages in poolselling or bookmaking at any time or place; . . . or who records or registers bets or wagers or sells pools upon the result of any trial or contest of man or beast or between men or beasts, . . . is punishable by imprisonment in the county jail or state prison for a period of not less than thirty days and not exceeding one year."

It is not the province of the court to deal with the policy of the law, as that belongs exclusively to the legislature, which is composed of the representatives of the people and which acts for the people, and within the limits imposed by the constitution is vested under our system with the right to voice the will of the people in public enactments; and it is ordinarily the judge of the expediency of creating new crimes, and of prescribing penalties for them, light or severe. The courts can only examine the question as to whether or not the legislature, in any particular case, has violated the constitution by going beyond or contrary to its prohibitions or mandates. The rule is well established that in such case much is left to the discretion and judgment of the legislature; and the presumption always is that such discretion has in each case been wisely and justly exercised, and the law will not be held unconstitutional unless it is clearly in violation of the fundamental law. It has long been the practice in this country for the legislature of the state, or the legislative body of municipal corporations, to pass laws prohibiting and punishing any practice or business the tendency of which, as shown by experience, is to weaken or corrupt the morals of those who follow it, or to encourage idleness instead of habits of industry, and to prohibit and punish gambling in the various forms in which it is practiced. Such regulations, when not in conflict with general laws, or with the constitution or charter under which they are enacted, are universally upheld by the courts. In fact, it has been said that gambling in its many forms may be rightfully suppressed and punished, and that the question is no longer open for discussion in this country. (*Harper* v. *Commonwealth,* 93 Ky. 290, [19 S. W. 737] ; *Ex parte Tuttle,* 91 Cal. 589, [27 Pac. 933].)

In the case at bar it is contended on behalf of the prisoner that the section of the Penal Code is unconstitutional and void.

It is claimed, in the first place, that the act authorizing the trial judge in effect to make the crime either a felony or misdemeanor is an attempt to delegate legislative power to the trial judge, and hence is in violation of article III, section 1, of the constitution of the state, which reads as follows:

"The powers of the government of the state of California shall be divided into three separate departments, the legislative, executive and judicial; and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function pertaining to either of the others except as in this constitution expressly directed or permitted."

The section does not delegate legislative power. It enumerates the various acts which are prohibited and made criminal, and such acts are made criminal by the express will of the legislature. It prescribes what the law shall be in future cases arising under it. It does not attempt to make the question as to whether or not the act prohibited shall be a crime depend upon the will or discretion of the court or judge. It is the province of the court, through the machinery of a trial, to investigate and determine the question as to whether or not the defendant in the particular case has done the particular act charged as a violation of, and prohibited by, some particular part of the section. The legislature has said the punishment shall be imprisonment not less than thirty days in the county jail or state prison and not exceeding one year. The minimum and maximum punishment is stated. The court cannot make it less nor can it make it greater than the statute prescribes. The places where the defendant is to be imprisoned are stated, and the court cannot send the defendant to any other place than the county jail or the state prison. It was evidently in the mind of the legislature that there should be some power whereby mercy could be shown and discretion exercised in the severity of the punishment, depending upon the act done, the circumstances under which it was done, and the character and age of the person who committed the act. That discretion was left to the trial judge, who is selected by the people as the agent of the people for the purpose of seeing that the laws are applied according to their true spirit and intent. It was not the intention of the legislature that a young person of previous good character for

his first offense, whether intentional or not, should by an un-
bending rule receive the same punishment as the experienced
bookmaker who has followed the racetrack for years. In most
crimes the punishment is left to the discretion of the trial
court within the limits prescribed by the legislative will, and
in some cases with the jury; and it has never been held in any
case to which our attention has been called that such power
was a delegation of the power vested in the legislature. In
murder cases the jury, if it return a verdict finding the de-
fendant guilty of murder in the first degree, may recommend
that he be imprisoned in the state prison for life, evidently
leaving the jury by its verdict to impose the death penalty or
life imprisonment; and such power has never been questioned;
and in such case, when the defendant pleads guilty of mur-
der in the first degree, the judge may impose a sentence of im-
prisonment for life, or in his discretion impose the penalty of
death (*People* v. *Dabner*, 153 Cal. 398, [95 Pac. 880]).
Where the defendant is charged with grand larceny, the jury
may, in cases where the evidence would justify a verdict of
either grand larceny or petty larceny, bring in a verdict for
the lesser offense, which is in effect leaving it to the discretion
of the jury to make the crime either a felony or misdemeanor,
and yet such power has never been questioned. The punish-
ment for the crime of assault with a deadly weapon is impris-
onment in the state prison or in the county jail not to exceed
two years, or a fine not to exceed $5,000, or both, thus
leaving it to the trial judge to impose a fine of one dollar or
a fine of $5,000, or two years in the state prison (Pen.
Code, sec. 245). While the section has been in force since the
codes were adopted in 1872, and has been before the courts in
many cases, it has never been held to be unconstitutional as
being a delegation of legislative power.

The Penal Code contains similar provisions as to many other
crimes, the punishment imposed for which may make them
either felonies or misdemeanors, a few instances of which
selected from many are the crimes of seduction for the pur-
pose of prostitution (sec. 262); receiving stolen property (sec.
496); forging telegraph or telephone messages (sec. 474); in-
juring highways or bridges (sec. 588); fraud in keeping ac-
counts in books of corporations (sec. 563); bribing telephone
or telegraph operators (sec. 641). In fact, our whole system

in regard to crimes and punishments necessarily leaves much to the discretion of the jury and to the trial judge. It makes no difference that the legislature has designated certain crimes as felonies, and certain other crimes as misdemeanors, or divided crimes into two classes. The crime is in many cases classified by the punishment under the express provisions of the Penal Code (sec. 17). It was said in *People* v. *Gray,* 137 Cal. 267, [70 Pac. 20], in speaking of the crime of seduction: "It may therefore be either a felony or a misdemeanor; whether it is considered the one or the other depends upon the character of the judgment rendered by the trial court. If the judgment be imprisonment in the state prison, the crime is a felony. If a fine only, or imprisonment in the county jail, a misdemeanor. It is provided in section 17 of the Penal Code that in such case, if the judgment impose a punishment less than imprisonment in the state prison, the offense shall be deemed a misdemeanor for all purposes; and that in such a case the offense shall be deemed to be a misdemeanor has been expressly held by this court in a number of cases. (*People* v. *Cornell,* 16 Cal. 187; *People* v. *Salorse,* 62 Cal. 142; *People* v. *Ayhens,* 85 Cal. 88, [24 Pac. 635] ; *People* v. *Perini,* 94 Cal. 573, [29 Pac. 1027].)'' In the last case cited the defendant was prosecuted for receiving stolen goods, which offense is punishable by imprisonment either in the state prison or the county jail, and the court said: "Whether the person convicted of this offense has committed a felony or a misdemeanor can be ascertained by the nature of the judgment. If the defendant is sentenced to serve a term in the state prison, the crime is a felony; otherwise a misdemeanor." (See *People* v. *Smith,* 143 Cal. 597, [77 Pac. 449]; *In re Sullivan,* 3 Cal. App. 193, [84 Pac. 781].)

A felony at common law was an offense punishable by death, or to which the old English law attached the total forfeiture of lands or goods; but the essential difference between a felony and a misdemeanor is now practically lost in England since the felony act of 1870 (Bouvier's Law Dictionary; Moz. & W. Law Dic.). In this country it simply denotes the degree or class of crimes (Bishop's New Criminal Law, sec. 616). In fact, the distinction between a felony and a misdemeanor is for the legislature, and our legislature has expressly stated where a crime may be punishable by imprisonment in the

state prison, and also by fine and imprisonment in the county jail in the discretion of the court, such crime shall be deemed a misdemeanor for all purposes after a judgment imposing a punishment other than imprisonment in the state prison. The legislature has designated the classification, and the means whereby such classification shall be ascertained. The distinction between a judicial act and a legislative act has been defined by Judge Field as follows: "The one determines what the law is and what the rights of the parties are with reference to transactions already had. The other prescribes what the law shall be in future cases arising under it. Wherever an act undertakes to determine a question of right or obligation or of property as the foundation on which it proceeds, such act is to that extent a judicial one, and not the exercise of legislative functions." (*Sinking Fund Cases*, 99 U. S. 700.) And our own supreme court has said: "Legislative power prescribes rules of conduct for the government of the citizen or subject, while judicial power punishes or redresses wrongs growing out of the violation of rules previously established. The distinction in short lies between a sentence and a rule." (*Ex parte Shrader*, 33 Cal. 279.)

In the case at bar the court will be called upon to declare the law and impose the penalty under the section passed by the legislature making the act a crime. The legislature has vested discretion in the court, but has not authorized the court to determine as to whether or not certain acts would constitute a crime.

It is further claimed that the section violates article I, section 6, of the constitution of the state, which prohibits cruel and unusual punishments. It is hardly necessary to discuss this contention, even if it could be raised by the prisoner, who may never be convicted, and even if he should be convicted might receive a sentence of thirty days in the county jail. Imprisonment in the county jail or in the state prison is not unusual; in fact, it is the most common mode of punishment in all civilized countries. It is not cruel in the sense used in the constitution. Cruel and unusual punishments are punishments of a barbarous character and unknown to the common law. The word, when it first found place in the Bill of Rights, meant not a fine or imprisonment or both, but such punishment as that inflicted by the whipping post, the pillory, burning at the stake, breaking on the wheel, and the like; or quar-

tering the culprit, cutting off his nose, ears or limbs, or strangling him to death. It was such severe, cruel and unusual punishments as disgraced the civilization of former ages, and made one shudder with horror to read of them. (Cooley's Constitutional Limitations, 7th ed., p. 471 et seq.; *State* v. *McCauley,* 15 Cal. 429; *Whitton* v. *State,* 133 Ind. 404, [32 N. E. 1019]; *State* v. *Williams,* 77 Mo. 310.) The legislature is ordinarily the judge of the expediency of creating new crimes, and prescribing the punishment, whether light or severe. (*Commonwealth* v. *Murphy,* 165 Mass. 666, [52 Am. St. Rep. 496, 42 N. E. 504]; *Southern Express Co.* v. *Commonwealth,* 97 Va. 59, [22 S. E. 809].)

Counsel for petitioner have devoted many pages of their brief to an analysis of the grammatical construction of the section of the Penal Code in question, contending that it is a complex sentence of over thirty lines, and of such phraseology as to make it impossible to determine what particular acts are necessary to be grouped together to constitute the crime intended to be denounced by the section. It is sufficient to say that the complaint charges the prisoner with doing certain acts which are prohibited by the section, and which, if proven, will subject him to a punishment thereunder. A person of common understanding would by reading the section and reading the complaint know that the defendant was charged with certain acts prohibited by the section. The provisions of the Penal Code must be construed according to the fair import of their terms with a view to effecting their object and to promote justice (sec. 4). Of course, if the act charged is one which is not a crime under any section of the code, the prisoner would have to be discharged, but this is not such case.

It is not necessary to discuss other questions, as we do not deem any of them of sufficient importance to justify us in discharging the prisoner.

We conclude that the section of the Penal Code is constitutional, and that the complaint states an offense thereunder.

Let the prisoner be remanded.

Hall, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 23, 1909.