[Crim. No. 6723. Fifth Dist. Feb. 29, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
BOBBY DUANE MAIN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Part II of the principal opinion is not published because it does not meet the standards for publication contained in California Rules of Court, rules 976(b) and 976.1.

Part II of the concurring and dissenting opinion of Andreen, J., relates to part II of the principal opinion and for that reason is not published.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Julia Cline Newcomb, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eddie T. Keller and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BROWN (G. A.), P. J.—

### PART I

The 18-year-old defendant, Bobby Duane Main, pled guilty to one count of robbery (Pen. Code, § 211) and firearm use (Pen. Code, § 12022.5).

Two other counts of robbery and one count of unlawful taking of a motor vehicle were dismissed. He was denied probation and sentenced to state prison for the middle term of three years. The court, finding facts in mitigation, struck the punishment for the use allegation.

Since 1975 Penal Code section 1203.06 has precluded probation for any person who personally uses a firearm in the commission of certain specifically listed crimes. Robbery is one of the enumerated crimes.

Welfare and Institutions Code section 1732.5 was enacted as part of Proposition 8 on June 8, 1982. That section provides that no person convicted of "murder, rape or any other serious felony, as defined in Section 1192.7 of the Penal Code, committed when he or she was 18 years of age or older shall be committed to Youth Authority." Robbery and the commission of a felony with a firearm are both serious felonies listed in Penal Code section 1192.7.

Thus, appellant was neither eligible for a California Youth Authority (CYA) commitment nor for probation. The statutory scheme created by these two code sections resulted in a mandatory prison term for appellant.

Appellant's principal argument on appeal is that this statutory scheme subjected him to cruel or unusual punishment in violation of article I, section 17, of the California Constitution. We will reject appellant's argument and uphold the sentence.

A brief statement of the facts taken from the probation report will be helpful. Appellant robbed the coowners of Coleman Restaurant and an employee at gunpoint. Reportedly, Mr. Bill Coleman was closing his place of business when appellant entered the restaurant armed with a .22 caliber handgun and wearing a sheer stocking mask over his face. Appellant demanded the wallets from Mr. and Mrs. Coleman and an employee. In addition, appellant demanded that Mr. Coleman give him the keys to Mr. Coleman's truck and a bottle of whiskey. Appellant then left the restaurant and drove Mr. Coleman's pickup away from the scene.

At approximately 2:30 a.m. the following morning, officers from the Visalia Police Department found Mr. Coleman's truck inside Keener's Cycle Center in Visalia. The vehicle had been driven through a plate glass window, and a black Harley-Davidson motorcycle had been stolen. Shortly thereafter, officers observed appellant riding the stolen motorcycle. The officers began chasing appellant at speeds of approximately 110 miles per hour. After continued pursuit, the officers chased appellant into a grove of

trees and the motorcycle spun out and went down. Appellant was then arrested for these offenses.

The probation report shows that there were several circumstances in mitigation. Appellant had no prior criminal or juvenile record; the weapon he used was inoperable and not loaded; he turned 18 years of age only a few days before the event; the victims of the robbery were his former employers and they recommended against a prison sentence; the probation officer received numerous letters recommending leniency in light of the lack of a prior record and the fact that this was a single, unprecedented course of aberrant behavior. Before the probation officer found out that he was precluded from doing so, he recommended a CYA commitment.

## DISCUSSION

Penal Code section 1203.06 prohibiting probation to anyone who uses a firearm in the commission of a robbery has been on the books since 1975. The legislative intent underlying the enactment of this section was that "'probation and suspension of sentence would be denied, *without any exception in unusual cases in the interests of justice,* to any person who uses a firearm during the commission of various felonies, including . . . robbery . . . .' (Leg. Counsel's Dig. of Sen. Bill No. 278, 1 Stats. 1975 (Reg. Sess.) Summary Dig., ch. 1004, p. 262; italics added)." (*People* v. *Tanner* (1979) 24 Cal.3d 514, 520 [156 Cal.Rptr. 450, 596 P.2d 328].)

Legislative authority to deny probation to persons who use a gun in the commission of certain classes of offenses, as in Penal Code section 1203.06, was upheld in *People* v. *Tanner, supra,* 24 Cal.3d 514. Welfare and Institution Code section 1732.5, which became effective June 9, 1982, has no effect on probation; the provisions of that section result in the unavailability of a Youth Authority commitment for youths 18 to 21 years of age for certain serious offenses.

The thrust of appellant's contention seems to be that the combined effect of the two statutory provisions denies a sentencing court any discretion in fashioning a punishment to fit the offense as well as the offender, resulting in a punishment disproportionate to the relative culpability of this offender for this offense. He contends that as a result it violates the California constitutional provision against cruel or unusual punishment.

As stated in *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921], a punishment may constitute cruel or unusual punishment "if, although not cruel or unusual in its method, it is so disproportionate to

the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*Id.*, at p. 424.)

■ To aid the administration of the rule, *Lynch* suggests three methods of analysis: (1) examine the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society (*In re Lynch, supra,* 8 Cal.3d 410, 425); (2) compare the challenged penalty with punishments prescribed in the same jurisdiction for different offenses, deemed by the same test to be more serious (*id.*, at p. 426); and (3) compare the challenged penalty with punishments prescribed for the same offense in sister jurisdictions (*id.*, at p. 427).

At the outset we note the preeminence of the legislative prerogative in this area. ■ As stated in *In re Lynch, supra,* 8 Cal.3d 410: "We recognize that in our tripartite system of government it is the function of the legislative branch to define crimes and prescribe punishments, and that such questions are in the first instance for the judgment of the Legislature alone. [Citations.]

"Yet legislative authority remains ultimately circumscribed by the constitutional provision forbidding the infliction of cruel or unusual punishment, adopted by the people of this state as an integral part of our Declaration of Rights. It is the difficult but imperative task of the judicial branch, as coequal guardian of the Constitution, to condemn any violation of that prohibition. ■ As we concluded in *People* v. *Anderson* (1972) 6 Cal.3d 628, 640 [100 Cal.Rptr. 152, 493 P.2d 880], 'The Legislature is thus accorded the broadest discretion possible in enacting penal statutes and in specifying punishment for crime, but the final judgment as to whether the punishment it decrees exceeds constitutional limits is a judicial function.' [Citations.]

"We add that the determination of whether a legislatively prescribed punishment is constitutionally excessive is not a duty which the courts eagerly assume or lightly discharge. Here, as in other contexts, ' "mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears." ' [Citation.]" (*Id.*, at pp. 414-415.)

■ "Whether a particular punishment is disproportionate to the offense is, of course, a question of degree. The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible. The

judiciary, accordingly, should not interfere in this process unless a statute prescribes a penalty 'out of all proportion to the offense' [citations], i.e., so severe in relation to the crime as to violate the prohibition against cruel or unusual punishment.'' (*Id.*, at pp. 423-424.)

▇▇▇▇▇ It is also important to keep in mind that both probation and the availability of the Youth Authority commitment are privileges granted by the Legislature and are not rights. Probation is a statutory creation. (Cal. Const., art. IV, § 1; Pen. Code, § 1203; *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; *People* v. *Hess* (1951) 104 Cal.App.2d 642, 685-686 [234 P.2d 65]; cf., *People* v. *Tanner, supra,* 24 Cal.3d 514, 519-520.)

Regarding the decision as to who is eligible for a CYA commitment, the Legislature has created the Youth Authority (Welf. & Inst. Code, § 1700) and ''[i]t is a matter of practical necessity, . . . and one of legislative discretion, to fix theoretical lines where there are no real ones . . . . [¶] There is no forbidden discrimination in the classification of those who are ineligible for commitment to [CYA] even though they meet the age requirement. The Legislature may properly regard life imprisonment or the death penalty as necessary for the protection of the public in the case of grave offenses, just as it may regard imprisonment for not less than 90 days or the payment of a fine as adequate in the case of minor offenses.'' (*In re Herrera* (1943) 23 Cal.2d 206, 213 [143 P.2d 345], disapproved on another point in *People* v. *Olivas* (1976) 17 Cal.3d 236, 257 [131 Cal.Rptr. 55, 551 P.2d 375]; *People* v. *Woolbert* (1965) 232 Cal.App.2d 544, 547 [42 Cal.Rptr. 919].)

*Lynch* dealt with the imposition of a sentence of one year to life for a second act of indecent exposure in violation of Penal Code section 314. In applying the three-pronged test to the facts of that case, the court held the penalty—life imprisonment—to be disproportionate to the crime. The cases following *Lynch* fit neatly into this type of proportionality analysis.

▇▇▇▇▇ In the instant case, however, appellant does not contend that a state prison sentence of three years is disproportionate to the crime of armed robbery. Indeed, he would be hard pressed to make such an argument in view of the seriousness with which society traditionally regards armed robbery. It cannot be gainsaid that robbery is a very serious crime posing a great risk of serious bodily injury. Even in a situation where, as here, the firearm is inoperable or not loaded, there is a possibility that the victim will respond with great bodily force in self-defense, using a deadly weapon. Thus, the offense involved in the instant case is a potentially violent crime. The seriousness of the crime is underscored by the fact that Penal Code section 1192.7 lists robbery, even without a firearm, as a serious felony.

The commission of a felony with a firearm is listed as a separate serious offense. It is also pertinent to note that, in comparing this sentence with the California sentences for arguably "less serious" crimes, the middle term of the following offenses is greater: first degree burglary (Pen. Code, § 461), simple kidnaping (Pen. Code, § 208), and pimping (Pen. Code, § 266h). Further, although appellant was sentenced to three years in the state prison, if it had been possible to commit him to CYA and the judge had followed the recommendation of the probation officer, appellant would have been sentenced to CYA for five years, not three years.

Thus, in the final analysis appellant seems to be arguing not that the length of the sentence is disproportionate, but that the place of confinement, that is, prison rather than CYA or on probation, constitutes cruel or unusual punishment. Accordingly, it is not entirely clear that the *Lynch*-type three-factor proportionality analysis is appropriate or necessary in this type of case.

On its face, three years in prison for armed robbery does not appear to be cruel or unusual. ■ Imprisonment for armed robbery is today, and was at common law, recognized as an acceptable means of punishment for a conviction of armed robbery. Such punishment is not "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch, supra,* 8 Cal.3d 410, 424.) Nor is it "of a barbarous character and unknown to the common law" (*In re O'Shea* (1909) 11 Cal.App. 568, 575 [105 P. 776]), nor does it violate "evolving standards of decency that mark the progress of a maturing society" (*Trop* v. *Dulles* (1958) 356 U.S. 86, 101 [2 L.Ed.2d 630, 642-643, 78 S.Ct. 590]). ■ Since appellant does not challenge the length of his sentence, and because appellant does not have a right to a CYA commitment or probation instead of prison, appellant's argument of cruel or unusual punishment upon this analysis must fail.

Appellant relies upon *In re Foss* (1974) 10 Cal.3d 910 [112 Cal.Rptr. 649, 519 P.2d 1073] to substantiate his claim that a proportionality analysis is apposite. *Foss* is easily distinguishable. That case was decided under the Indeterminate Sentence Law. The court held that a statute (Health & Saf. Code, § 11352, as it existed at that time) which precluded parole consideration for a period of 10 years for a person convicted a second time of selling heroin constituted cruel or unusual punishment. Without such prohibition, the offender would have been eligible for parole after serving one-third of his term. The fundamental concern of the court was how long the defendant had to serve for the offense and, in making the analysis, it followed *Lynch's* proportionality tests. Unlike *Foss,* however, the issue in the instant case is not how long but where the time must be served. To the same

effect is *In re Grant* (1976) 18 Cal.3d 1 [132 Cal.Rptr. 430, 553 P.2d 590], also relied upon by appellant.

Assuming, however, that the three-pronged *Lynch* test should be undertaken, appellant is not aided.

The first prong of the *Lynch* test requires "an examination of the nature of the offense and/or the offender, with particular regard to the degree of danger both present to the society. [Citation.] ■■ Relevant to this inquiry are the facts of the crime in question, the nonviolent nature of the offense, and whether there are rational gradations of culpability that can be made on the basis of the injury to the victim or to society in general. . . . [A]lso relevant is a consideration of the penological purposes of the prescribed punishment. [Citations.]" (*In re Foss, supra,* 10 Cal.3d 910, 919-920.)

■■ As has been stated, robbery with a firearm is a very serious crime which poses a great risk of serious bodily injury.

It must be readily acknowledged, however, that on the facts of this particular case the only realistic risk was possible injury to appellant from his victims or the police. It must also be concluded that appellant had no previous record, was not a sophisticated criminal, and that this was a single aberrant course of behavior. He presented little, if any, danger to society. Measured on any scale, appellant's culpability was low.

However, Penal Code section 1170 states that "the purpose of imprisonment for crime is punishment." This is a relevant penological purpose of the prescribed punishment.

Taking into consideration all the factors in the first prong of the *Lynch* test, we conclude that, even though appellant got a stiff sentence, getting a stiff sentence is not unconstitutional and is not per se "clearly, positively and unmistakably" cruel or unusual punishment.

Appellant can find even less comfort from the second and third prongs of the *Lynch* test. The second analytical step requires the comparison of the challenged punishment with punishments prescribed in the same jurisdiction for different, more serious offenses. Because it is the fact that appellant used a firearm that prohibits his receiving probation, any comparison of "more serious offenses" for which probation may be granted should include this factor. The firearm factor must be included because appellant would be eligible for probation if he had not used a firearm. Although appellant lists several serious crimes which do not result in the automatic denial of pro-

bation, they are either not as serious as robbery with a firearm or they do not involve the use of a firearm. Accordingly, those comparisons are inapposite.

Regarding appellant's ineligibility for CYA, appellant does not even attempt to argue that there are more serious crimes that would not result in a denial of a CYA commitment for 18- to 21-year-olds. Indeed, Welfare and Institutions Code section 1732.5 prohibits commitment to the CYA of any person 18 to 21 years of age who has committed any of the serious felonies listed in Penal Code section 1192.7. Subdivision (c) of the latter section includes virtually every serious felony.

It follows that the second prong of the *Lynch* analysis does not support appellant's argument.

The third prong requires a survey of the penalties imposed by other states for the same crime. ■ In applying this aspect of the *Lynch* test, the mere fact that a majority of other states impose a less severe penalty is not enough to show cruel or unusual punishment. In the case of *People* v. *Madden* (1979) 98 Cal.App.3d 249 [159 Cal.Rptr. 381], the defendants contended that the mandatory prohibition of probation under Penal Code section 1203.07 was cruel or unusual punishment. In applying the third prong of the *Lynch* analysis, this court noted that "[w]hile a comfortable majority of our sister states do permit probation for offenses similar to those involved here, it cannot be said that California has strayed from the 'virtually unanimous judgment of our sister states' [citations]. The percentage of jurisdictions permitting probation under the circumstances of the present case is between 75 and 80 percent. California stands in the company of about 12 states who deny probation under circumstances similar to this case. Although our Legislature has adopted the minority position, this alone would not compel a finding that the probation ban is unconstitutional." (*Id.*, at pp. 259-260.)

Similarly, in the case of *In re Maston* (1973) 33 Cal.App.3d 559 [109 Cal.Rptr. 164], in applying the third prong of the *Lynch* test the court stated that it interpreted "the *Lynch* case to authorize constitutional interference only for *gross excessiveness* in relation to the rest of the nation." (*Id.*, at p. 566; italics added.)

■ In the instant case, appellant argues that "there are 35 states that do not have a mandatory prison provision for the use of a firearm during the commission of a felony for the first offense." Percentagewise, this breaks down to 66 percent of the states not mandating state prison for the commission of a felony with a firearm for a first offense and 33 percent of

the states, including California, mandating a state prison term for the commission of a felony with a firearm for the first offense.

Thus, as in *Madden,* although California's statutory scheme prohibiting probation stands in the minority, it cannot be said that "California has strayed from the 'virtually unanimous judgment of our sister states' [citations]." (*People* v. *Madden, supra,* 98 Cal.App.3d 249, 259-260.) Clearly the number of states, including California, that have adopted the minority position is of sufficient size as to preclude constitutional interference under the third prong of the *Lynch* test. (*In re Maston, supra,* 33 Cal.App.3d 559, 566.)

Appellant also argues that "forty-five (45) states out of fifty do not terminate the juvenile court's authority to commit a person eighteen years old to a youth treatment institution. [¶] As a result, in at least forty-five states, [appellant] would have had the option of juvenile treatment in light of his age and lack of criminal experience."

Although this statistic is interesting, it is totally inapplicable to the issue before the court. Appellant was 18 years of age when he committed the robbery involved here. Civil Code section 25.1 provides that persons who have reached the age of 18 are adults. As an adult, appellant was tried and convicted in a superior court, and not in a juvenile court. Even before the passage of Proposition 8 the juvenile court would not have had jurisdiction over appellant. Therefore, appellant's statistics in this regard are not relevant.

We conclude that appellant's contention that the automatic denial of probation and commitment to CYA and the sentence to prison for three years constitutes cruel or unusual punishment must fail.

PART II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed.

Martin, J., concurred.

**ANDREEN, J.,** Concurring and Dissenting.—

---

*See footnote, *ante,* page 686.

## PART I

I concur in the majority's learned analysis on the issue of cruel or unusual punishment.

## PART II*

. . . . . . . . . . . . . . . . . . . . . . . . .

A petition for a rehearing was denied March 29, 1984, and appellant's petition for a hearing by the Supreme Court was denied May 24, 1984.

---

*See footnote, *ante,* page 686.