[No. F004998. Fifth Dist. May 30, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES BRYAN McNIECE, Defendant and Appellant.

**COUNSEL**

James T. Wilson, Wilson, Altschule & Sigmund and Myron Moskovitz for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eddie T. Keller, James T. McNally and Susan Rankin Bunting, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HANSON (P. D.), Acting P. J.—**

STATEMENT OF THE CASE

An information charged appellant with vehicular manslaughter with gross negligence in count I (Pen. Code, § 192, subd. (c)(3)),[1] driving under the influence of alcohol with injury in count II (Veh. Code, § 23153, subd. (a)), and driving with a blood alcohol level of .10 percent or above causing injury in count III (Veh. Code, § 23153, subd. (b)).

After a seven-day trial, the jury returned a verdict of guilty on all counts.

Appellant was sentenced to a six-year term on count I and an eight-month consecutive term on count II. The sentence on count III was stayed pursuant to section 654.

FACTS

On January 21, 1984, appellant, the owner and president of California Gun Specialties, hosted an annual sales meeting at the Lamp Liter Inn in Visalia. A cocktail party and dinner were held. Testimony is conflicting as to the amount of alcohol consumed by appellant. Various people testified that appellant did not appear to be intoxicated.

At approximately 11:30 p.m., appellant left the Lamp Liter Inn; around midnight, appellant traveled on Country Center Drive toward the Caldwell

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

Avenue intersection. The speed limit on Country Center Drive is 30 miles per hour; the speed limit on Caldwell Avenue is 45 miles per hour. The traffic on Caldwell Avenue has the right of way; a stop sign is at the Caldwell intersection. Experts for the prosecution and eyewitnesses testified appellant was traveling at a speed of about 50 to 55 miles per hour; he failed to slow down or stop at the stop sign. When he entered the intersection, appellant, driving a Ford Bronco vehicle, struck a Volkswagen automobile traveling on Caldwell Avenue carrying Karen Wonacott and Russell Bitney. Bitney was seriously injured in the accident; Wonacott was killed.

When Officer Jeff Goodwin of the Visalia Police Department arrived, he saw Bitney and Wonacott lying on the ground away from the vehicle. Although he felt no pulse, Goodwin administered cardiopulmonary resuscitation to Wonacott until an ambulance arrived. When Goodwin turned his attention to appellant, he noticed the smell of alcohol and that appellant was unstable in his coordination. Appellant's conduct during a field sobriety test administered by another officer led Goodwin to believe appellant was under the influence of alcohol. A blood test taken about an hour later showed appellant's blood alcohol level to be .155 percent.

DISCUSSION

I

Felony vehicular manslaughter is defined in this manner: "Manslaughter is the unlawful killing of a human being without malice. . . .

" . . . . . . . . . . . . . . . . . . . . . . .

"(c) Vehicular—

" . . . . . . . . . . . . . . . . . . . . . . .

"(3) Driving a vehicle in violation of Section 23152 or 23153 of the Vehicle Code and in the commission of an unlawful act, *not amounting to felony, and with gross negligence;* or driving a vehicle in violation of Section 23152 or 23153 of the Vehicle Code and *in the commission of a lawful act which might produce death, in an unlawful manner,* and *with gross negligence.*

"(4) Driving a vehicle in violation of Section 23152 or 23153 of the Vehicle Code and in the commission of an unlawful act, not amounting to felony, but without gross negligence; or driving a vehicle in violation of Section 23152 or 23153 of the Vehicle Code and in the commission of a

lawful act which might produce death, in an unlawful manner, but without gross negligence." (§ 192, italics added.) The differences in these types of vehicular manslaughter involve only the element of gross negligence and the applicable lengths of imprisonment. The difference in punishment between the two subdivisions of section 192 is impressive. Subdivision (c)(3) involves a penalty of four, six, or eight years in state prison, while the finding of vehicular manslaughter without gross negligence (subd. (c)(4)) supports a prison penalty of only sixteen months, two or four years (§ 193).

Appellant argues it was crucial the jury was not instructed clearly that a finding of gross negligence may not be based solely on the fact of driving under the influence of alcohol. Because no such instruction was given, appellant contends he was deprived of a fair trial.

The instructions regarding vehicular manslaughter and gross negligence stated: "The Defendant is charged in Count I of the Information with the commission of the crime of vehicular manslaughter involving alcohol, a violation of Section 192 Paragraph III, (C) and (D) of the Penal Code. The crime of vehicular manslaughter involving alcohol is the unintentional but unlawful killing of a human being in the driving of a vehicle in violation of Vehicle Code Section 23152 or Vehicle Code Section 23153.

"A killing is unlawful when a person commits an act inherently dangerous to human life or safety, amounting to a misdemeanor or an infraction as will be later defined, or negligently commits an act ordinarily lawful which might produce death.

"In order to prove the commission of the crime of such vehicular manslaughter, each of the following elements must be proved: First, that a human being was killed; secondly, that the driver of the vehicle committed an unlawful act, to wit a violation of Section 22450, 21802(a), or 22350 of the Vehicle Code, or negligently committed an act ordinarily lawful which might cause death; third, that such unlawful act or negligent conduct was the proximate cause of the death of the person killed; and, fourth, that the driver of the vehicle also violated Vehicle Code Section 23152 or Vehicle Code Section 23153.

"A proximate cause of a death is a cause which, in a natural and continuance sequence, produces the death and without which the death would not have occurred.

"If you find the Defendant is guilty of manslaughter as thus defined to you, you must also find whether the act causing the death was done with or without gross negligence, and you must declare your finding in your verdict. If you find the Defendant was guilty of manslaughter in the driving

of a vehicle, but entertain a reasonable doubt as to whether the act causing the death was committed with gross negligence, it would then be your duty to find it was committed without gross negligence.

"Now, negligence is the doing of something which a reasonably prudent person would not do or the failure to do something which a reasonably prudent person would do under similar circumstances. It is the failure to use ordinary or reasonable care.

"Ordinary or reasonable care is that care which persons of ordinary prudence would use in order to avoid injury to themselves or others under similar circumstances.

"The term gross negligence as used in the definition of manslaughter given in these instructions means the failure to exercise any care or the exercise of so little care that you are justified in believing that the person whose conduct is involved was wholly indifferent to the consequences of his conduct to the welfare of others."

No further instructions on the distinctions between ordinary negligence and gross negligence were given. The jury was never informed that the fact appellant was under the influence of alcohol was insufficient in itself to support a finding of gross negligence. The question of whether gross negligence existed was a complicated one and difficult to resolve. The jury was entitled to know what could not be considered on this point. (See *People v. Hebert* (1964) 228 Cal.App.2d 514, 519-520 [39 Cal.Rptr. 539] [the jury was entitled to a clear statement on the doctrine of proximate cause].)

■ "'It is settled that in criminal cases, even when not requested, the court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the evidence adduced before the court which are necessary for the jury's proper consideration of the case. [Citations.] At a minimum, it is the court's duty to ensure the jury is adequately instructed on the law governing all elements of the case submitted to it to the extent necessary for a proper determination in conformity with the applicable law. [Citation.]' (*People* v. *Iverson* (1972) 26 Cal.App.3d 598, 604-605 [102 Cal.Rptr. 913].)" (*People* v. *Sheffield* (1985) 168 Cal.App.3d 158, 163-164 [214 Cal.Rptr. 40].)

■ Although the general definition of gross negligence was given, a statement made by the prosecuting attorney during closing argument could have greatly misled the jury: "Do you feel based on the evidence in this case and what took place at the intersection that the alcohol did not cause

the accident? Are we talking about a stone cold sober person driving a vehicle down Country Center? No. Did it cause the accident? That is what gross negligence deals with, facts. Did it cause the accident? Absolutely, alcohol caused this accident.''

No one contested that appellant's use of alcohol was a cause of the accident, but gross negligence deals with much more than intoxication. The People continued and argued further: "No reasonable person can look at the accident, the circumstances of this case, and tell me or anyone that alcohol was not responsible for the death of Karen Wonacott. That is what this case is all about. That is what we have legislature [*sic*] for. That is why we have drunk driving laws. Alcohol causes accidents.

" . . . . . . . . . . . . . . . . . . . . . . . .

" . . . He chose to get into the vehicle. He chose to drink. He chose to be intoxicated to that extent. He chose to drive down Country Center." Under the circumstances, the definition of *gross* negligence was improperly presented to the jury. It was not made clear what the jury was required to find.

Again, while the instructions indicated there was a difference between the two levels of negligence, nowhere in the instructions was the jury actually told that drunk driving alone did not constitute gross negligence. It was indicated the two kinds of negligence differed, and gross negligence was defined generally; however, no instruction clarified that something in addition to appellant's being under the influence of alcohol was necessary to establish gross negligence. There was no request for this additional instruction. It was necessary in all fairness that the jury be instructed that the element of gross negligence could not be supported solely by facts which satisfied other essential elements of section 192, subdivision (c)(3), namely (1) drunk driving and (2) a traffic offense.

As Justice Brown further emphasized in *Sheffield,* " '[i]t is fundamental that a trial judge has a *sua sponte* duty to instruct the jury on all of the essential elements of the offense actually charged. [Citations.] The failure to instruct on an essential element of the offense actually charged is error whenever there is any evidence deserving of any consideration from which the jury could have found in favor of the defendant on the omitted element; because such an error is a denial of the defendant's constitutional right to have the jury determine every material issue presented by the evidence, regardless of how overwhelming the evidence of guilt may be, the error cannot be cured by weighing the evidence and finding that it is not reasonably probable that a correctly instructed jury would have reached

a result more favorable to the defendant. [Citations.]' (*People* v. *Hamilton* (1978) 80 Cal.App.3d 124, 133 [145 Cal.Rptr. 429].)'' (*People* v. *Sheffield, supra,* 168 Cal.App.3d at p. 164.)

If the Legislature had intended that the elements required to support a finding of driving under the influence and violating the traffic law were sufficient in themselves to support a finding of gross negligence, the two subdivisions would become a duplication. Obviously, gross negligence requires something in addition. It is essential that the jury understand what the distinction is. Here, it is not clear. We reverse as to count I and remand for retrial.

## II

■ A trial court has broad discretion to grant or deny probation, unless there is a statutory limitation. (*People* v. *Marquez* (1983) 143 Cal.App.3d 797, 803 [192 Cal.Rptr. 193].) For purposes of sentencing on remand, we share our concern with the method used. The granting of probation is not a matter of right, but a discretionary choice. (See *People* v. *Main* (1984) 152 Cal.App.3d 686, 693 [199 Cal.Rptr. 683].) However, an erroneous understanding by the trial court of its discretionary power does not result in a true exercise of discretion. (*People* v. *Marquez, supra,* at p. 803.)

■ Here, the trial court ignored factors favoring the grant of probation, and considered only criteria in support of a denial of probation. Furthermore, the criteria relied upon do not apply to these facts.

■ A trial court must state the factors which support the denial of probation and the sentencing of a defendant to state prison. (*People* v. *Romero* (1985) 167 Cal.App.3d 1148, 1151 [213 Cal.Rptr. 774].) California Rules of Court, rule 414, lists criteria to be considered in granting or denying probation. The criteria address facts relevant to the crime and to the defendant. The trial court relied on only two factors in rule 414 to deny probation: (1) the nature, seriousness and circumstances of the crime (rule 414(c)(1)); and (2) the vulnerability of the victim and the degree of harm or loss to the victim (rule 414(c)(2)).

The court in *People* v. *Bloom* (1983) 142 Cal.App.3d 310 [190 Cal.Rptr. 857], in considering aggravation in sentencing, expressed concern for reliance on the criteria of vulnerability of a victim and the degree of harm or loss suffered in cases involving vehicular manslaughter caused by a driver under the influence of alcohol. In *Bloom,* the defendant struck the victim's car head-on as he swerved in and out of traffic. He was traveling at a higher rate of speed than the cars he was trying to avoid hitting. (*Id.,* at p. 314.)

The court noted that all victims of drunk drivers are *vulnerable* victims. (*Id.*, at p. 322.) The court concluded that precisely for this reason drunk-driving victims should not be considered vulnerable to an extent greater than in other cases. (*Ibid.*) The court reasoned the element of vulnerability is *inherent* in the very crime of vehicular manslaughter caused by a driver under the influence of alcohol, and to use that factor to aggravate the term is improper. "Felony drunk driving *presupposes* an entirely innocent and unsuspecting victim." (*People* v. *Levitt* (1984) 156 Cal.App.3d 500, 515 [203 Cal.Rptr. 276], italics in original.) The drunk driver does not seek to take deliberate advantage of the vulnerability of victims, unlike the situation in other criminal cases. (See *ibid.*) The *Bloom* court did not, however, completely foreclose the use of this criterion in future cases: "While we can visualize extraordinary situations in which a drunk driving victim might be considered to be 'particularly vulnerable,' such a situation is not present here, and therefore the court erred in applying rule 421(a)(3) to this case." (*Id.*, at p. 322.)

The trial judge below expressed his knowledge of the *Bloom* case, but only *attempted* to distinguish it on its facts. The judge noted that visibility at the intersection of Caldwell Avenue and Country Center Drive was severely limited because of structures and trees and the speed at which appellant was traveling gave Bitney little opportunity for evasive action to avoid a collision.

The judge addressed the other aspect of rule 414(c)(2)—the degree of harm or loss: "The degree of harm or loss to the victim under 414(c)(2) is an additional consideration which goes without saying. It was enormous. Death and serious bodily injury occurred." The degree of harm or loss to the victim of course was "enormous"; however, felony vehicular manslaughter is based on the death of a victim. We note that rule 421(a)(3), addressing circumstances in aggravation, has been upheld in criminal cases involving violent felonies where the circumstances of the crime "make the defendant's act 'especially contemptible.'" There is no evidence here other than the crime itself to support such a conclusion.

The trial court found other factors to uphold the sentencing in *Bloom*, such as an extremely high blood alcohol reading of the defendant and a lack of remorse.

We find insufficient facts to remove the case from the holding and discussion in the *Bloom* case. We cannot say the victims were *particularly* vulnerable under the statute (Cal. Rules of Court, rule 414(c)(2)) so as to support a denial of probation. It was error here, as in *Bloom*, to rely upon the vulnerability subsection to support denial. Nor can we rely upon the

tragic death and bodily injury to uphold the denial of probation under the seriousness of the crime criterion under these facts.

The probation officer addressed the relevant rule 414 factors in his report. The judge mentioned the two factors discussed, then concluded: "I would say that taking those . . . two factors, 414(c)(1) and 414(c)(2), outweigh the other factors concerning the granting or denying of probation that have come before the court, and that is my reason for in the first sentence choice denying probation and imposing a prison sentence."

Appellant's act of driving his truck while under the influence of alcohol resulted in the death of one person and injury to another; no one disputed this. The seriousness of the crime is not diminished because appellant has no prior criminal record and apparently is an upstanding member of the community. However, the reasons as stated are insufficient to deny probation under California Rules of Court.

Reliance solely on rule 414(c)(1) and (c)(2) on the state of this record and under the reasoning found in *Bloom,* is insufficient to support the denial of probation. To hold otherwise would indicate the statute itself prevents the granting of probation under all such similar circumstances. We must consider the statute in its perspective; we note that even though the Legislature recently increased the punishment for the crime itself (§ 193), the Legislature did not see fit to impose a statutory prohibition preventing the granting of probation. Under the wording of the Rules of Court we reverse for the court's consideration of *all* pertinent factors to grant or deny probation in resentencing.

### III

We also question other sentencing choices. ▮ Ordinarily, if a court states adequate reasons for rejecting probation, it need not explain its choice of imposing the middle term of punishment. (*People* v. *Arceo* (1979) 95 Cal.App.3d 117, 121 [157 Cal.Rptr. 10].) Statutory presumption favors the middle term unless there are circumstances in aggravation or mitigation. (§ 1170, subd. (b).)

▮ Although it would have been acceptable to select the middle term without giving any basis, the judge explained his choice as follows: "Under circumstances in aggravation, this is under Rule 421 of the California Rules of Court, and Rule 423, the circumstances in mitigation are to be weighed. Again, I am thoroughly familiar with those. I have compared circumstances in mitigation against circumstances in aggravation, and it is the court's opinion that neither one really outweighs the other that much. In other

words, I cannot see a justification here under the mitigating circumstances when comparing them to the circumstances in aggravation to grant a mitigated—or impose a mitigated sentence.

"Also, in considering the numerous circumstances in mitigation against the at least three or more circumstances in aggravation, and I will mention them after awhile, I do not see the justification for a maximum or aggravated sentence of eight years. My choice would be after looking at the circumstances in aggravation and comparing them with those in mitigation to impose the middle sentence of six years." The court did not specify what mitigating factors were involved. In imposing a consecutive term, the judge listed the following aggravating factors: (1) the crime involved multiple victims, (2) the crime involved great bodily injury, and (3) the victim was particularly vulnerable.

The first aggravating factor involves the allegation that multiple victims were involved. (Cal. Rules of Court, rule 421(a)(4).) Case law has dealt with the exact same language in rule 425, which specifies factors justifying a consecutive sentence. In *People* v. *Humphrey* (1982) 138 Cal.App.3d 881, 882 [188 Cal.Rptr. 473], the court stated: "The trial court improperly relied on the multiple-victim factor under California Rules of Court, rule 425(a)(4) . . . . [W]e find the rule applies only to a situation where a defendant is convicted of two or more counts or crimes and at least one of those counts involves multiple victims." The count alleging vehicular manslaughter involves only one victim—Karen Wonacott. It was improper to use this reason as a possible aggravating factor for the sentence on the vehicular manslaughter count.

The second possible aggravating factor concerns whether the crime involved great bodily injury. (Cal. Rules of Court, rule 421(c)(1).) This aggravating factor requires more than the basic fact of bodily harm. (*People* v. *Duran* (1982) 130 Cal.App.3d 987, 991 [182 Cal.Rptr. 17].) To be an aggravating factor, appellant must have committed cruel, vicious, and callous acts beyond the basic crime of vehicular manslaughter. (*Ibid.*) "The essence of 'aggravation' relates to the effect of a particular fact in making the offense distinctively worse than the ordinary." (*People* v. *Moreno* (1982) 128 Cal.App.3d 103, 110 [179 Cal.Rptr. 879].)

Bodily harm resulting in death is an element of felony vehicular manslaughter. *Reliance upon that fact alone* is improper when trying to aggravate a term of imprisonment. Although Wonacott's death was most tragic, cruelty, viciousness, or callousness on appellant's part beyond the occurrence of the accident was not shown. It was not established that this

crime was distinctively worse than the usual and tragic felony vehicular manslaughter.

The final aggravating factor mentioned by the trial judge considered the vulnerability of the victims. The problems surrounding this factor were discussed in terms of the denial of probation. The same basic analysis applies. If Bitney and Wonacott were not vulnerable victims under *Bloom* for purposes of probation, they cannot be considered vulnerable victims for purposes of aggravating the sentence.

Because all three stated aggravating factors do not apply, only the mitigating factors remain. Weighing the trial judge's statement regarding the balancing of factors, had the judge ignored *inapplicable* aggravating factors, he could and might have mitigated the sentence to the lower term of four years.

## IV

 Appellant urges the six-year base term he received for felony vehicular manslaughter with gross negligence constitutes cruel and unusual punishment as it applies to him and the facts of his case. Appellant points to the fact his behavior (a blood alcohol level of *only* .155 percent) did not demonstrate a high degree of culpability. Furthermore, he has no prior criminal record, no history of alcohol abuse, and "an impeccable record of service to his family and community." "[A] punishment may violate article I, section 6, of the Constitution if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921].) Three techniques are used to determine whether a particular punishment constitutes cruel and unusual punishment. First, the nature of the offense and/or the offender, with regard to the degree of danger both present to society is considered. (*Id.,* at p. 425.) Second, the challenged penalty is compared with other penalties in the same jurisdiction for different offenses which are deemed more serious. (*Id.,* at p. 426.) Finally, the challenged penalty is compared with penalties in other jurisdictions for the same offense. (*Id.,* at p. 427.)

In most cases, even if the latter two tests demonstrate disproportionality, if the first test shows otherwise, the determination on the first test is controlling. (*People* v. *Gayther* (1980) 110 Cal.App.3d 79, 90 [167 Cal.Rptr. 700].) The Legislature is given a broad discretion in enacting penal statutes specifying punishment for crime. (*People* v. *Main, supra,* 152 Cal.App.3d

686, 692.) A mechanical application of the three tests is not warranted. (See *Gayther, supra,* at p. 90.)

Appellant argues vigorously that his culpability was of a lesser degree than in cases involving felony vehicular manslaughter with gross negligence. Appellant points to other cases where the defendants had higher blood alcohol levels and were traveling at faster speeds when the accidents occurred. However, appellant tested above the designated legal level of intoxication; he was driving his truck with a .155 percent blood alcohol level. █ Although he was not traveling at an excessive speed, appellant proceeded down a road and through a stop sign without slowing at an intersection with somewhat limited visibility. On these facts, culpability was no less than that of others given the same punishment.

Appellant has no prior criminal record, no prior record of alcohol abuse, and is reputed to be a valuable member of the community. Even so, this was not "'a crime of ordinary gravity committed under ordinary circumstances,'" nor was it a nonviolent crime. (See *In re Lynch, supra,* 8 Cal.3d at pp. 425-426 [the court seemed to look at the crime in the abstract, the punishment imposed, then to the background of the particular defendant].) Appellant was the cause of the accident that resulted in a death. Great deference is given to legislative determinations on punishment. █ A statute will not be overturned unless its unconstitutionality "clearly, positively and unmistakably appears." (*People* v. *Main, supra,* 152 Cal.App.3d at p. 692.) █ Given the terms prescribed for manslaughter in general, and for murder,[2] we cannot conclude that a six-year prison sentence for felony vehicular manslaughter with gross negligence is cruel and unusual punishment.[3] The term is not so disproportionate to the crime as to shock the conscience and offend fundamental notions of human dignity.

V

█ The trial court's decision to impose an eight-month consecutive term in count II—driving under the influence of drugs or alcohol with injury

---

[2]First degree murder is punishable by a term of 25 years to life. Second degree murder is punishable by a term of 15 years to life. A conviction for voluntary manslaughter can receive a term of three, six, or eleven years. The term for involuntary manslaughter is two, three, or four years. Felony vehicular manslaughter without gross negligence has a term of sixteen months, two, or four years.

[3]Appellant contends his term is statistically out of proportion with the term he would have received had he been stopped only for driving under the influence and suggests a more statistically proportionate term for his crime is one year of imprisonment. It is the Legislature's function to designate terms of imprisonment—not the court's. The comparison based purely on statistical proportions fails to consider that more weight is given to a death rather than to a simple statutory violation.

(Veh. Code, § 23153)—was barred by section 654, which provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other." Although section 654 generally does not apply when crimes are committed against different victims (*People* v. *Burney* (1981) 115 Cal.App.3d 497, 506 [171 Cal.Rptr. 329]), this is not true where the crime is driving under the influence.

In the very recent case of *Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345 [211 Cal.Rptr. 742, 696 P.2d 134], the court concluded that multiple counts of violation of Vehicle Code section 23153 can be charged, even if more than one victim is involved, only when the actus reus prohibited by the statute has been committed more than once. (*Id.,* at p. 349.) The court noted that the act prohibited by Vehicle Code section 23153 is the driving of a car while intoxicated and violating any law relating to the driving of a vehicle. (*Ibid.*) The *Wilkoff* court adopted a view expressed much earlier in *People* v. *Lobaugh* (1971) 18 Cal.App.3d 75 [95 Cal.Rptr. 547], which states: "'[U]nlike the usual "multiple victim" case, here the fundamental concern of the state is not the outrage done the victims, but rather the prevention of "drunken driving" and the punishment of those who so conduct themselves.'" (*Wilkoff* v. *Superior Court, supra,* 38 Cal.3d at p. 350.)

Therefore, the sentence in count II involving the violation of Vehicle Code section 23153, the act of driving while under the influence and violating any law relating to the driving of a vehicle, cannot be used to punish twice. (§ 654.) Count I involved the act of driving while under the influence with gross negligence resulting in the death of an individual; again, although driving while under the influence of alcohol has been made punishable in different ways, appellant cannot be punished more than once for the basic act (§ 654).

The judgment as to counts II and III is affirmed. The judgment as to count I is reversed. The matter is remanded for retrial and/or resentencing in accord with the opinions expressed herein.

Martin, J., and Best, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 11, 1986. Mosk, J., was of the opinion that the petition should be granted.