TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 94-1002 |
| of | : | |
| | : | July 3, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE MICKEY CONROY, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

May the Legislature enact a statute authorizing the courtroom paddling of a minor who is adjudged a ward of the juvenile court for placing graffiti upon real or personal property?

CONCLUSION

The Legislature may enact a statute authorizing the courtroom paddling of a minor who is adjudged a ward of the juvenile court for placing graffiti upon real or personal property.

ANALYSIS

The proliferation of graffiti[1] placed upon public and private property, principally by juveniles, has prompted calls for punishment that might serve as an effective deterrent to such activity. One proposal would authorize the paddling of any minor who is adjudged a ward of the court for defacing property with graffiti.[2] The paddling would be administered in the courtroom by a parent of

_____

[1] "Graffiti" is statutorily defined as including "any unauthorized inscription, word, figure, mark, or design that is written, marked, etched, scratched, drawn, or painted on real or personal property." (Pen. Code, §§ 594, 640.5, 640.6.)

[2] Under the terms of Welfare and Institutions Code section 602, a person below the age of 18 who violates a criminal

1. 94-1002

the minor unless the court determines that the parent has not administered a satisfactory paddling, in which event it would be administered by the bailiff.[3]  We are asked to determine whether the above described punishment proposal would pass constitutional muster.  We conclude that it would.

Preliminarily, we note that in *City and County of San Francisco* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 103, 113, the Supreme Court summarized the law making authority of the Legislature in the following terms:

> ". . . `[t]he Constitution of this State is not to be considered as a grant of power, but rather as a restriction upon the powers of the Legislature; and that it is competent for the Legislature to exercise all powers not forbidden by the Constitution of the State, or delegated to the [federal] government, or prohibited by the Constitution of the United States.'  [Citations.]

> "As our court explained nearly a half century ago, `[W]e do not look to the Constitution to determine whether the legislature is authorized to do an act, but only to see if it is prohibited.  In other words, unless restrained by constitutional provision, the legislature is vested with the whole of the legislative power of the state.' [Citation.] Moreover, the governing authorities' additionally establish that `[i]f there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action.  Such restrictions and limitations are to be construed strictly, and are not to be extended to include matters not covered by the language used.'  [Citation.]"

Our task, then, is to determine whether the federal or state Constitution prohibits the enactment of the proposed legislation.

United States Constitution

The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."[4]  The cruel and unusual punishment clause, where applicable, (1) limits the kinds of punishment that can be imposed on those convicted of crimes (*Estelle* v. *Gamble* (1976) 429 U.S. 94; *Trop* v. *Dulles* (1958) 356 U.S. 86), (2) proscribes punishment grossly disproportionate to the severity of the crime (*Weems* v. *United States* (1910) 217 U.S. 349), and (3) imposes substantive limits on what can be made criminal

---

statute comes within the jurisdiction of the juvenile court and may be adjudged a ward of the court.  Placing graffiti on property violates a criminal statute (Pen. Code, §§ 594-594.8, 640.5-640.7).

[3]  Under the proposal, the paddling would consist of ten or fewer strikes with a hardwood paddle of specified dimensions and be administered on the outside of normal apparel.

[4]  This constitutional provision is made applicable to the states through the due process clause of the Fourteenth Amendment.  (*Robinson* v. *California* (1962) 370 U.S. 660, 666.)

and punished as such (*Robinson* v. *California*, *supra*, 370 U.S. 660). We are here concerned primarily with the first of these restrictions.[5]

In *Ingraham* v. *Wright* (1977) 430 U.S. 651, the United States Supreme Court examined the scope of the Eighth Amendment as it related to the paddling of students at a junior high school. The court described the evidence presented by the students as follows:

> ". . . The evidence, consisting mainly of the testimony of 16 students, suggests that the regime at Drew was exceptionally harsh. The testimony of Ingraham and Andrews, in support of their individual claims for damages, is illustrative. Because he was slow to respond to his teacher's instructions, Ingraham was subjected to more than 20 licks with a paddle while being held over a table in the principal's office. The paddling was so severe that he suffered a hematoma requiring medical attention and keeping him out of school for several days. Andrews was paddled several times for minor infractions. On two occasions he was struck on his arms, once depriving him of the full use of his arm for a week." (*Id.*, at p. 657, fns. omitted.)

The court rejected the application of the Eighth Amendment to the use of corporal punishment to discipline the students, primarily by distinguishing the school setting from that of a prison where the amendment has long been applied to protect inmates:

> "The prisoner and the schoolchild stand in wholly different circumstances, separated by the harsh facts of criminal conviction and incarceration. The prisoner's conviction entitles the State to classify him as a `criminal,' and his incarceration deprives him of the freedom `to be with family and friends and to form the other enduring attachments of normal life.' [Citations.] Prison brutality, as the Court of Appeals observed in this case, is `part of the total punishment to which the individual is being subjected for his crime and, as such, is a proper subject for Eighth Amendment scrutiny.' [Citation.] Even so, the protection afforded by the Eighth Amendment is limited. After incarceration, only the `"unnecessary and wanton infliction of pain,"' [citations], constitutes cruel and unusual punishment forbidden by the Eighth Amendment.

> "The schoolchild has little need for the protection of the Eighth Amendment. Though attendance may not always be voluntary, the public school remains an open institution. Except perhaps when very young, the child is not physically restrained from leaving school during school hours; and at the end of the school day, the child is invariably free to return home. Even while at school, the child brings with him the support of family and friends and is rarely apart from teachers and other pupils who may witness and protest any instances of mistreatment.

---

[5] For purposes of this analysis, we will assume that the prescribed paddling is not disproportionate to the offense. No serious or lasting injury would be expected from the paddling, while acts of graffiti vandalism have become a costly form of criminal behavior.

"The openness of the public school and its supervision by the community afford significant safeguards against the kinds of abuses from which the Eighth Amendment protects the prisoner. In virtually every community where corporal punishment is permitted in the schools, these safeguards are reinforced by the legal constraints of the common law. Public school teachers and administrators are privileged at common law to inflict only such corporal punishment as is reasonably necessary for the proper education and discipline of the child; any punishment going beyond the privilege may result in both civil and criminal liability. . . . As long as the schools are open to public scrutiny, there is no reason to believe that the common-law constraints will not effectively remedy and deter excesses such as those alleged in this case." (*Id*., at pp. 669-670; fns. omitted.)

In *Jackson* v. *Bishop* (8th Cir. 1968) 404 F.2d 571, relied upon in *Ingraham*, the court held that the use of a strap to whip inmates in an Arkansas prison violated the Eighth Amendment. It explained its ruling in part as follows:

"Our reasons for this conclusion include the following: (1) We are not convinced that any rule or regulation as to the use of the strap, however seriously or sincerely conceived and drawn, will successfully prevent abuse. The present record discloses misinterpretation and obvious overnarrow interpretation even of the newly adopted January 1966 rules. (2) Rules in this area seem often to go unobserved. Despite the January 1966 requirement that no inmate was to inflict punishment on another, the record is replete with instances where this very thing took place. (3) Regulations are easily circumvented. Although it was a long-standing requirement that a whipping was to be administered only when the prisoner was fully clothed, this record discloses instances of whippings upon the bare buttocks, and with consequent injury. (4) Corporal punishment is easily subject to abuse in the hands of the sadistic and the unscrupulous. (5) Where power to punish is granted to persons in lower levels of administrative authority, there is an inherent and natural difficulty in enforcing the limitations of that power. . . ." (*Id*., at p. 579.)

Based upon factors similar to those found in *Jackson*, several federal courts have ruled that the use of corporal punishment in juvenile custodial institutions violates the Eighth Amendment. (See, e.g., *Morales* v. *Turman* (5th Cir. 1977) 562 F.2d 993, 998; *Santana* v. *Collazo* (D. Puerto Rico 1982) 533 F.Supp. 966, 977-978.) In *Nelson* v. *Heyne* (7th Cir. 1974) 491 F.2d 352, certiorari denied 417 U.S. 476, the court stated:

". . . [W]e find in the record before us, to support our holding, general consideration similar to those the court in *Jackson* found relevant: (1) corporal punishment is easily subject to abuse in the hands of the sadistic and unscrupulous, and control of the punishment is inadequate; (2) formalized School procedures governing the infliction of the corporal punishment are at a minimum . . . ." (*Id*., at p. 356.)[6]

---

[6]Currently in California corporal punishment may not be used on any confined juvenile or adult (Pen. Code, § 673) and

On balance, we believe that a courtroom is more analogous to a school than to a prison or juvenile custodial institution when considering the application of the Eighth Amendment. The paddling would be administered under a judge's supervision by or in the presence of the juvenile's parents. Various other persons would be witnesses. The punishment would be inflicted only on the single occasion. Arbitrary actions undertaken in a custodial setting would not be possible. Indeed, the courtroom setting for administration of the paddling would afford certain protections not found even in a school setting.

Moreover, in providing for the courtroom paddling of a juvenile, the Legislature would be making a determination that paddling is an appropriate sanction for the crime committed and that other forms of punishment have not been effective in curbing graffiti vandalism by minors. Specific constraints imposed by the Legislature could easily make the punishment not disproportionate to the crime, given the long history of disciplining juveniles by use of corporal punishment.

We conclude that the Legislature, without violating the provisions of the United States Constitution, may enact a statute authorizing the courtroom paddling of a minor who is adjudged a ward of the juvenile court for placing graffiti upon real or personal property.

### California Constitution

We now turn to the question of whether the proposed punishment would be consistent with the California Constitution. Article I, section 17 of the Constitution states: "Cruel or unusual punishment may not be inflicted or excessive fines imposed." This provision basically tracks the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution discussed above.[7] The primary difference between the two lies in California's use of the phrase "cruel *or* unusual" as opposed to "cruel *and* unusual."[8]

---

has been banned in the public schools since 1986 (Ed. Code, §§ 49000-49001).

[7] The United States Supreme Court has applied the terms "cruel" and "unusual" as a unified concept, but has noted the possibility that the latter term may have an independent meaning:

> "Whether the word `unusual' has any qualitative meaning different from `cruel' is not clear. On the few occasions this Court has had to consider the meaning of the phrase, precise distinctions between cruelty and unusualness do not seem to have been drawn. [Citations.] These cases indicate that the Court simply examines the particular punishment involved in light of the basic prohibition against inhuman treatment, without regard to any subtleties of meaning that might be latent in the word `unusual.' . . . If the word `unusual' is to have any meaning apart from the work `cruel,' however, the meaning should be the ordinary one, signifying something different from that which is generally done." (*Trop* v. *Dulles, supra*, 356 U.S. at 100, fn. 32.)

[8] Article I, section 24 of the California Constitution was amended by an initiative measure to provide that:

> ". . . the California Constitution shall not be construed by the courts to afford greater rights to criminal defendants, including minors, than those afforded by the Constitution of the United States. These rights include the right to not suffer the imposition of cruel or unusual punishment."

It has been held that the framers of the California Constitution purposefully used the disjunctive form when adopting the "cruel or unusual" language "in order to establish their intent that both cruel punishments and unusual punishments be outlawed in this state." (*People* v. *Anderson* (1972) 6 Cal.3d 628, 636-637.)   As to the latter type of punishments, it appears that the term "unusual" has been analyzed if the punishment imposed was arguably excessive or disproportionate, if there was doubt as to whether the prescribed punishment was "cruel" (*id.*, at p. 654), or if the penalty was found to be unfairly applied (*People* v. *Schueren* (1973) 10 Cal.3d 553, 559-561).

As for the concept of cruelty, the framers of the California Constitution "used the term cruel in its ordinary meaning -- causing physical pain or mental anguish of an inhumane or torturous nature." (*People* v. *Anderson*, *supra*, 6 Cal.3d at 646.)   In determining whether a proscribed punishment would constitute cruelty, California courts are guided by "evolving standards of decency that mark the progress of a maturing society" as an appropriate expression of the applicable standard. (*Id.*, at pp. 647-648; *People* v. *Main* (1984) 152 Cal.App.3d 686, 694.)

Since 1972, California courts examining the cruel or unusual prohibition have focused primarily on the issue of the proportionality of the punishment to the offense.   In *In re Lynch* (1972) 8 Cal.3d 410, 424, the court held that a punishment may constitute cruel or unusual punishment "if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity."   Nonetheless, in *People* v. *Wingo* (1975) 14 Cal.3d 169, the court observed:

"Of course a cruel or unusual *method* of punishment will provide a separate ground for holding a penalty unconstitutional.  (See *Weems* v. *United States*, 217 U.S. 349, 377 (1910).)"   (*Id.*, at p. 175, fn. 5.)

As previously noted, our focus here is directed at the method of punishment proposed, as we do not find that the courtroom paddling would present a proportionality issue in the circumstances envisioned.  With respect to the Legislature's authority to prescribe different kinds of punishment, the court stated in *People* v. *Wingo, supra,* 14 Cal.3d at 174:

"Finally we pause to emphasize the considerable burden a defendant must overcome in challenging a penalty as cruel or unusual.  The doctrine of separation of powers is firmly entrenched in the law of California, and a court should not lightly encroach on matters which are uniquely in the domain of the Legislature.  Perhaps foremost among these are the definition of crime and the determination of punishment. [Citations.]  While these intrinsically legislative functions are circumscribed by the constitutional limits of article I, section 17, the validity of enactments will not be

---

However, the amendment was struck down by the Supreme Court as being beyond the reach of the initiative process.  (*Raven* v. *Deukmejian* (1990) 52 Cal.3d 336.)

questioned `unless their unconstitutionality clearly, positively, and unmistakably appears.' [Citations.]" (Fn. omitted.)

If a decision were to be made by the Legislature that a relatively mild form of corporal punishment is an appropriate type of punishment for minors who commit acts of graffiti vandalism, we could not find the enactment's "unconstitutionality clearly, positively and unmistakably appears" either as to cruelty or unusualness.

Just as it does in determining the degree of punishment, the Legislature must have some measure of discretion in determining the method or kind of punishment. "Presented with a rational basis for the choice, the courts should hesitate to call the penalty cruel or unusual." (*In re Maston* (1973) 33 Cal.App.3d 559, 562.) As explained in *In re Lynch*, *supra*, 8 Cal.3d at 423-424:

". . . The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible . . . ."

In some instances, increasing the degree of existing penalties is not an effective response to a growing crime problem. As conditions in modern society change, it may become necessary to utilize a different type of punishment in response to a particular crime. Article I, section 17 of the Constitution does not deprive the Legislature of flexibility in fashioning the appropriate response to criminal behavior.

We conclude that the Legislature, without violating the provisions of the California Constitution, may enact a statute authorizing the courtroom paddling of a minor who is adjudged a ward of the juvenile court for placing graffiti upon real or personal property.

\* \* \* \* \*