Filed 12/13/13  P. v. Singh CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GURMUKH SINGH,<br><br>    Defendant and Appellant. | F064865<br><br>(Merced Super. Ct. No. MF50024)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  John D. Kirihara, Judge.

Jean M. Marinovich, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Jesse Witt, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Gurmukh Singh (defendant) was charged with one count of gross negligence vehicular manslaughter.  (Pen. Code[1] § 192, subd. (c)(1).)  Defendant was

---

[1] All statutory references are to the Penal Code unless otherwise noted.

convicted by a jury and sentenced to four years in state prison. He now appeals, contending that expert testimony was improperly admitted at trial, the prosecutor committed error under *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*), and the sentencing court abused its discretion in denying probation. We affirm.

## TRIAL EVIDENCE

### The Accident Scene

On August 30, 2008, California Highway Patrol Officers Richard Pereira and Noe Lomeli responded to the scene of a traffic accident in Merced County at the intersection of Pepper Street and Bradbury Road.

A collision had occurred between a commercial truck driven by defendant and a Toyota vehicle driven by Harjevan Rai. The Toyota and the tractor portion of defendant's truck were found in a canal near the intersection. The Toyota was "wedged" between the defendant's truck and a concrete wood bridge. Scene photographs showed damage to the front nose of the tractor portion of defendant's vehicle.

The Toyota was found submerged in water with Harjevan Rai inside. Harvjevan Rai had died from a subdural hemorrhage, subarachnoid hemorrhage and contusion of the brain.

At its intersection with Pepper Street, Bradbury Road has stop signs facing east and westbound traffic. There is no dispute that defendant was traveling on Bradbury Road, subject to a stop sign at Pepper Street, when the accident occurred.

A marking on the roadway facing westbound traffic on Bradbury Road read: "Stop Ahead." There is also a white limit line where Bradbury Road intersects Pepper Street. The text, "STOP," is printed on the roadway before the limit line.

There were no stop signs facing traffic traveling on Pepper Street through its intersection with Bradbury Road. There was conflicting evidence regarding whether Harjevan Rai was traveling on Pepper Street or Bradbury Road immediately before the accident. Officer Lomeli concluded Harjevan Rai had been traveling southbound on

2.

Pepper Street. At the scene, Officer Lomeli testified that defendant claimed the Toyota was traveling ahead of him on Bradbury Road immediately before the accident.

Officer Jerry Elrod testified that there was an orchard near the intersection of Bradbury Road and Pepper Street. Due to the size and configuration of the trees in the orchard, "traffic coming on westbound Bradbury or southbound [on] Pepper Street could not see each other until they're very close to the intersection…."

**Reconstruction of the Accident**

Prosecution Witnesses' Reconstruction

Officer Lomeli reconstructed the accident as follows: "… Mr. Singh failed to stop at the posted stop sign at the intersection of Bradbury Road and Pepper Street, and … Harjevan Rai … had the right-of-way. He had no stop sign, so there was no reason for him to stop at this intersection … proceeding southbound. And when Mr. Gurmukh Singh failed to stop at the stop sign, broadsided him pretty much. The front of [defendant's truck] collided with the left side of the Toyota Corolla Rai was driving."

Officer Lomeli was asked why he says defendant did not stop at the stop sign. Officer Lomeli testified the physical evidence was consistent with defendant failing to stop at the stop sign. Specifically, the tire friction marks attributed to defendant's truck started "pretty much right at the limit line." Officer Lomeli also opined that if defendant had stopped at the stop sign, he would have been able to avoid colliding with the Toyota.

Officer Elrod opined that "even if one wasn't aware of the stop sign that was there, just the fact you're approaching the intersection and you can't see cross traffic, you don't know possibly if there's a vehicle there, or not, that just due diligence would tell you [you] need to slow down and be watching for cross traffic."

Defendant's Reconstruction Expert

Defendant's accident reconstruction expert testified that the collision was consistent with either scenario: defendant stopping at the stop sign or defendant failing to stop at the stop sign.

**Defendant's Statements to Law Enforcement[2]**

Officer Lomeli spoke with defendant at the scene of the accident. Defendant only spoke Punjabi, so a translator assisted Officer Lomeli in taking defendant's statement. Defendant's employer, Mr. Kullar, also assisted in translating defendant's statement. Defendant told Officer Lomeli that he had been traveling westbound on Bradbury Road at approximately 25 to 30 miles per hour.[3] Defendant said the Toyota was ahead of him traveling westbound on Bradbury Road. Defendant said the Toyota suddenly came to a stop, so defendant moved to the eastbound lane to pass the Toyota. Then, defendant stated, the Toyota passed him and again came to a stop. Defendant then passed the Toyota again, and defendant came to a stop at the stop sign on Pepper Street. Defendant then proceeded westbound into the intersection. The Toyota passed defendant again and slammed on its brakes. Defendant applied his brakes to avoid hitting the Toyota.

Officer Elrod told defendant that he did not "believe" defendant's account based on the evidence. Officer Elrod testified as to defendant's response: "[Defendant] told me that there was [*sic*] no witnesses to the accident; it was only him and the other driver; and since the other driver was dead, that nobody would really know what really happened."

Officer Lomeli also concluded defendant's version of the accident was not consistent with the physical evidence, which showed that the front of defendant's truck had collided with the left *side* of the Toyota. Officer Elrod also concluded the Toyota had been traveling southbound on Pepper Street, based on the location of the gouges in the roadway and the resting points of the vehicles.

---

[2] This heading refers to statements *attributed* to defendant. Defense counsel argued that the translation of defendant's statement could have been inaccurate.

[3] The speed limit on Bradbury Road is 55 miles per hour.

<u>Mr. Murphy</u>

Officer Lomeli interviewed a man named Mr. Murphy at the scene.  On the day of the accident, Mr. Murphy described the sun as blinding and conveyed that he did not see the stop sign that day.  However, he was familiar with the stop sign and did stop at it.

<u>Mr. Camp</u>

Officer Lomeli testified that another officer spoke with a man named Shane Camp.  Mr. Camp was standing in his driveway a quarter mile east of the traffic collision.  "The freightliner" (presumably a reference to defendant's truck) passed by traveling westbound on Bradbury Road at about 20 to 30 miles per hour.  Mr. Camp heard tires skidding and an impact noise, he "walked out" and saw the accident.

<u>Mrs. Camp</u>

Defense counsel had Officer Lomeli review a "statement" from Mrs. Camp.  The statement indicated that Mrs. Camp was traveling in a car behind defendant with her husband.  They became impatient with defendant's slow speed and passed him.  Eventually, they pulled into their driveway and defendant waved at Mrs. Camp.

<u>Defendant's Trucking Experience</u>

Defendant was working as a truck driver for Jasvinder Kullar's company when the accident occurred.  Defendant told Officer Elrod that he had been working for Mr. Kullar for "almost a year" before the accident.[4]  Defendant said he averaged four trips per month for Mr. Kullar.

On the day of the accident, defendant had picked up the truck involved in the accident from Kullar's office in Ballico, as he had done in the past.  Defendant's destination was Detroit, Michigan.  Kullar testified that when his drivers left his business heading northbound, they would use Bradbury Road to get to the freeway.

---

[4] Kullar testified that he thought defendant had been a driver for seven or eight months before the accident.

**Closing Argument**

During closing argument, both sides referenced defendant's statements to law enforcement. Defense counsel said, "Mr. Singh's statement, it's partially unsubstantiated by the facts. If Mr. Singh said that the boy stopped in front of him after playing some passing – after doing some passing, if he said that, that is unequivocally wrong. If Mr. Singh said that, that is false.… So we know that statement of Mr. Singh is at least partially untrue."

During the prosecutor's rebuttal argument, the following exchanged occurred:

> "[PROSECUTOR]: … But when you think about the defendant's conduct here, obviously, there's – there's tragedy and very likely he was nervous on August 30, after this crash, came up with this – with this lie. Doesn't he have an obligation to tell the truth at some point?
>
> "[DEFENSE COUNSEL]: Objection. Objection.
>
> "THE COURT: Counsel, yes. Grounds?
>
> "[DEFENSE COUNSEL]: An amendment issue, your Honor.
>
> "[PROSECUTOR]: I'm talking about Officer Elrod, your Honor, to the Officer Elrod interviews.
>
> "THE COURT: Thank you."

## ANALYSIS

## I.

## DEFENDANT WAS NOT PREJUDICED BY THE ADMISSION OF OFFICER ELROD'S TESTIMONY REGARDING HIS FAMILIARITY WITH THE INTERSECTION

Defendant argues the trial court erred by "permitting" Officer Elrod to testify that defendant was familiar with the intersection where the accident occurred and was therefore aware of the stop sign. We conclude that any error was not prejudicial.

The erroneous admission of expert testimony is reviewed under the harmless error test of *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (E.g., *People v. Moore* (2011)

6.

51 Cal.4th 386, 406-407.)  Under that test, we ask whether it is reasonably probable that defendant would have received a more favorable result in the absence of the error. (*Watson*, *supra*, 46 Cal.2d at p. 836.)

Here, any error in admitting Officer Elrod's testimony regarding defendant's familiarity with the intersection was not prejudicial.  We reach this conclusion for two reasons.  First, there was other, more direct, evidence defendant saw the stop sign.  Notably, Officer Elrod testified that defendant *said* he "saw the stop sign."  Second, there was other evidence defendant acted negligently, apart from his alleged familiarity with the intersection.  There was evidence that vision of cross-traffic was impaired for vehicles along defendant's path of travel.  Thus, Officer Elrod opined that "even if one wasn't aware of the stop sign that was there, just the fact you're approaching the intersection and you can't see cross traffic, you don't know possibly if there's a vehicle there, or not, that just due diligence would tell you [you] need to slow down and be watching for cross traffic."  Moreover, there was evidence that "Stop Ahead" and a limit line were marked on the roadway surface.  As a result, the jury was presented with significant evidence of gross negligence apart from Officer Elrod's testimony that defendant was familiar with the intersection.  Even if the testimony at issue had been excluded, we are not "of the opinion" that it is "reasonably probable" defendant would have obtained a "more favorable" result.  (*Watson*, *supra*, 46 Cal.2d at p. 836.)

**II.**

**THE PROSECUTOR'S COMMENTS AT CLOSING ARGUMENT DID NOT AMOUNT TO *GRIFFIN* ERROR**

Defendant contends the prosecutor committed *Griffin* error during closing argument.  As noted above, the prosecutor made the following comment during closing argument:  "But when you think about the defendant's conduct here, obviously, there's – there's tragedy and very likely he was nervous on August 30, after this crash, came up with this – with this lie.  Doesn't he have an obligation to tell the truth at some point?"

7.

The parties offer two competing interpretations of the prosecutor's comments. Defendant contends the comments influenced the jury to consider defendant's "moral obligation to testify at trial." The Attorney General submits the prosecutor was referring to allegedly false statements defendant made to Officer Elrod.

When a defendant contends an ambiguous prosecutorial statement constitutes *Griffin* error, we must determine whether there is a "reasonable likelihood" the comments could have been understood to refer to defendant's failure to testify. (*People v. Clair* (1992) 2 Cal.4th 629, 662-663.) " '[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.' " (*People v. Tully* (2012) 54 Cal.4th 952, 1048, quoting, *Donnelly v. DeChristoforo* (1974) 416 U.S. 637, 647 (*DeChristoforo*); see also *United States v. Wihbey* (1st Cir. 1996) 75 F.3d 761, 770 [applying *DeChristoforo* standard to *Griffin* error analysis].)

We understand how the prosecutor's rhetorical question, viewed in isolation, might have created momentary ambiguity. However, "prosecutorial comment must be examined in context .…" (*United States v. Robinson* (1988) 485 U.S. 25, 33.) Immediately after the prosecutor made the comments in question, defense counsel objected. The prosecutor then said, "I'm talking about Officer Elrod, your Honor, to the Officer Elrod interviews." The prosecutor then continued his argument: "When the defendant on November 4, this is several weeks in August, September, October. This is over two months later when the defendant speaks to Officer Elrod.…" The context makes it clear the comment referred to defendant's pretrial statements, not his intrial silence. And even if the context were not so clear, we would not lightly infer that the jury drew the most damaging meaning from the comment (i.e., criticizing defendant's failure to testify) rather than a less damaging meaning (i.e., arguing defendant made false pretrial statements). We find no *Griffin* error.

# III.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING PROBATION

At sentencing, the court denied probation.  When stating the reasons for the decision on the record, the trial court focused on the seriousness of the offense.  (See Cal. Rules of Court, rule 4.414(a)(1).)  The court also noted defendant's "somewhat ambiguous expression of remorse" and prior traffic infractions.  (See Cal. Rules of Court, rule 4.414(b)(1) & (7).)

" 'In reviewing [a trial court's determination whether to grant or deny probation,] it is not our function to substitute our judgment for that of the trial court.  Our function is to determine whether the trial court's order granting [or denying] probation is arbitrary or capricious or exceeds the bounds of reason considering all the facts and circumstances.' [Citation.]"  (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1311, citing *People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 825.)

Defendant contends that the seriousness of the *results* of a vehicular manslaughter may not support denial of probation because "the degree of harm is inherent in the crime of vehicular manslaughter."  He cites our decision in *People v. McNiece* (1986) 181 Cal.App.3d 1048, 1058, overruled on another point by *People v. Flood* (1988) 18 Cal4th 470, for support.  The Attorney General contends we wrongly decided *McNiece* and that the "collision" at issue here was "more serious than other vehicular manslaughter cases."

We agree that the trial court's denial of probation based on the "seriousness[] and circumstances of the crime" (Cal. Rules of Court, rule 4.414(a)(1)) was not an abuse of discretion.  However, we focus not on the seriousness of the *collision* or resultant harm as an end in itself, but rather emphasize the seriousness of defendant's *negligence* in light of the circumstances.  As the trial court noted, "there is a special responsibility on the part of commercial truck drivers to exercise due caution because the result of an accident – a lack of attention, a small mistake – can be tragic."  In other words, the increased potential

9.

for deadly accidents makes negligent conduct by commercial truck drivers all the more serious.  While the commercial truck's size contributed to the severity of the accident, it is not the severity of the accident itself that makes defendant's crime more serious under California Rules of Court, rule 4.414(a)(1).[5]  Rather, it is the potential for devastating accidents inherent in commercial truck driving that makes defendant's *negligence* more serious.  Given the heightened risk of danger associated with commercial vehicles, the trial court concluded defendant's failure to exercise due care was a more serious breach than that involved in some other vehicular manslaughters.

As an appellate court, it is not our role to evaluate whether we would have granted probation if we had sat in place of the trial court.  Rather, our function is " 'to determine whether the trial court's order granting [or denying] probation is arbitrary or capricious or exceeds the bounds of reason considering all the facts and circumstances.'  [Citation.]" (*Weaver*, *supra*, 149 Cal.App.4th at p. 1311.)  We cannot say the trial court's conclusion was " 'arbitrary or capricious' " or that it " 'exceeds the bounds of reason.' "  (*Ibid*.)

## DISPOSITION

The judgment is affirmed.

_____
Poochigian, J.

WE CONCUR:


_____
Cornell, Acting P.J.


_____
Franson, J.

_____

[5] As a result, we need not address the Attorney General's criticism of *McNiece*, *supra*, 181 Cal.App.3d 1048.

10.