Filed 7/8/25  P. v. Vaughn CA4/2
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073346 |
| v. | (Super.Ct.No. FSB18003370) |
| AARON JAMES VAUGHN et al., | OPINION ON TRANSFER |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  William Jefferson Powell IV, Judge.  Affirmed in part, reversed in part and remanded with directions.

Deanna L. Lopas, under appointment by the Court of Appeal, for defendant and appellant Aaron James Vaughn.

Andrea S. Bitar, under appointment by the Court of Appeal, for defendant and appellant Victor Wilkins.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin H. Urbanski and Christopher P. Beesley, for Plaintiff and Respondent.

1

In 2022, defendants Aaron James Vaughn and Victor Wilkins (collectively, Defendants) were convicted of human trafficking along with counts of pimping and pandering; some counts involved a minor victim. Each was sentenced to the upper term in prison after the trial court found multiple aggravating factors, including the fact that the Defendants had prior convictions. In supplemental briefs, the Defendants argued that they were entitled to resentencing in light of the then recent amendment to Penal Code section 1170, subdivision (b).[1] (Sen. Bill No. 567 (2021-2022 Reg. Sess.); Stats. 2021, ch. 731, § 1.3.) We found that one of the Defendants' terms violated section 654, but concluded that the trial court would have imposed upper terms anyway due to Vaughn's and Wilkins's prior convictions, as properly considered factors.

Defendants petitioned for review, arguing, among other issues, that the trial court erred in imposing aggravated terms using factors that had not been found true by proof beyond a reasonable doubt, and that it erred in imposing the upper terms pursuant to the amended provisions of section 1170, subdivision (b). The Supreme Court issued a grant-and-hold respecting Defendants petitions for review, pending review in *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*), which now holds that when a trial court relies on aggravating factors that were not presented to, and found true by a jury, the error is subject to harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18.

Upon issuing the opinion in *Lynch*, *supra*, 16 Cal.5th 730 the Supreme Court transferred the case to us with directions to vacate our earlier opinion and to reconsider

---

[1] All further statutory reference are to the Penal Code unless otherwise indicated.

the sentencing issue in light of *Lynch.* In turn, because we are unable to hold that the error is harmless beyond a reasonable doubt, we remand the matters to the trial court for resentencing in light of *Lynch,* as well as the most recent amendments to section 1170, subdivision (b).

## BACKGROUND

We recite the relevant information about the offenses and the imposition of sentence as set forth in the unpublished portion of our original opinion (*People v. Vaughn* (Apr. 18, 2022, E073346), review granted Aug. 10, 2022, matter transferred with the opn. ordered nonpub. Feb. 26, 2025, S274644 (*Vaughn I*)), with editing for brevity.

"STATEMENT OF FACTS

"A.    *Testimony of Jane Doe.*

"Through most of 2018, Jane Doe[2] was 17. In March 2018, she was working as a prostitute in Oakland. Her pimp used the moniker 'DeeTee.'

"Around the end of May, DeeTee became physically abusive. Around the same time, Jane started communicating with Wilkins through Tagged (a dating app) and Instagram. He indicated that he was a pimp. He used the moniker 'Polo' or 'Polo Junky.' In the pimping subculture, 'POLO' stands for 'pimps only live once.'

---

"[2] The minor victim was referred to below by this fictitious name. We have not found any trial court order authorizing this. (See § 293.5.) Nevertheless, we do the same, to provide protective nondisclosure. (Cal. Rules of Court, rule 8.90(b)(4).)

3

"On June 1, after DeeTee gave Jane another beating, she contacted Wilkins and met him at a Jack in the Box in Oakland. This made it official that he was her pimp. Jane brought along a second prostitute called Molly, whom she had met a few days earlier.

"Wilkins took Jane and Molly to a Motel 6 in Oakland. He talked to them both about working as prostitutes for him." (*Vaughn I*, *supra*, E077346.)

"Jane worked for Wilkins as a prostitute in Oakland, San Francisco, Los Angeles, and San Bernardino. He gave her 'rules' about where to walk, how to 'catch dates,' 'what to allow,' and what to charge. He supplied her with condoms. She turned all her earnings over to him.

"On the night of June 1, Wilkins drove Jane and Molly to San Francisco, where they walked the blade.[3] However, there were no customers, and there were a lot of police.

"Around 3:00 a.m. on June 2, Wilkins picked them up and drove them back to the Motel 6. On the way, they picked up Vaughn. Vaughn used the moniker 'Royal' or 'Royalty.' Wilkins introduced Vaughn as someone close, 'like a cousin, [a] brother.' Wilkins said he was going to talk to Vaughn 'about Molly going with [Vaughn].' Jane understood this to mean that Wilkins and Vaughn were 'partner[s].'

"In the early morning of June 2, Wilkins and Vaughn dropped Jane off on the blade in Oakland, where she worked as a prostitute until late morning. Wilkins and

_____

"[3] The "blade" (or "track") is a street frequented by prostitutes.

4

Vaughn picked her up, then picked up Molly. They all went back to the Motel 6. Wilkins and Vaughn told Jane that Vaughn was now Molly's pimp.

"Around noon on June 2, at Wilkins's direction, the group left to go to the Los Angeles area. They arrived around 6:00 or 7:00 p.m. They got two rooms at a motel; Jane stayed with Wilkins, and Molly stayed with Vaughn. Wilkins and Vaughn dropped Jane and Molly off on the blade.

"On the night of June 3-4, Jane was out on the same blade again. Molly was also out on the blade; 'a handful of times,' Jane saw her get into a car. At one point, Wilkins and Vaughn drove by to check on Jane.

"While in the Los Angeles area, Jane told Molly that she wanted to leave Wilkins. Somehow, Wilkins got wind of this. He and Vaughn confronted Jane. Wilkins told Jane, 'If [she] left him, [she] wouldn't get nowhere.' Vaughn told Jane that Wilkins 'was a good person' who 'was there for [her] best interest.'

"On June 4, Wilkins decided they should all go to San Bernardino. They arrived around noon. Wilkins and Vaughn got two rooms at the Econo Lodge. Once again, Jane stayed with Wilkins, and Molly stayed with Vaughn. Wilkins gave Jane a keycard to their motel room, Room 112.

"The blade was nearby, so Jane walked there. She saw Molly on the blade. Jane had not been there long when a police officer stopped her for indecent exposure, because one of her breasts was visible through her fishnet top.

"She lied to him about almost everything. She said she was 20, then said she was 18; however, she gave him a date of birth that made her 17. She said she had come down

5

from Antioch with 'two girls.' At one point Molly walked by, and Jane pointed her out as 'the individual [she] came with.' Meanwhile, Jane saw Wilkins drive by twice. A female officer arrived, searched Jane, and found the keycard.

"At the police station, Detective Kimberly Hernandez interviewed Jane. At first, Jane continued to lie. She identified her pimp as DeeTee and said he brought her to San Bernardino. She denied knowing Wilkins. She identified Vaughn as another pimp she had met in Oakland.

"Eventually, however, Jane admitted that Wilkins was actually her pimp and that she had come down with him. She had turned over to him a total of 'two bands,' meaning $2,000.

"At some point, Jane overheard Wilkins and Vaughn talking about Molly giving money to Vaughn. However, she never actually saw Molly give Vaughn any money.

"Jane never told Wilkins how old she was." (*Vaughn I*, *supra*, E073346.)

"F.     *Prior Convictions*.

"1.     *Vaughn*.

"In 2006, in San Joaquin County, Vaughn pleaded guilty to pandering.

"In 2010, Vaughn pleaded guilty in federal court in California to four counts of sex trafficking of a minor. (18 U.S.C. § 1591(a)(1).) As part of the plea, he admitted recruiting two 14-year-olds, a 15-year-old, and a 16-year-old to work for him as prostitutes.

"In 2017, in Sonoma County, Vaughn pleaded guilty to two counts of aiding prostitution (§ 653.23, subd. (a)) and one count of second degree burglary (§ 459).

6

"This conviction arose from an incident in November 2016. Police officers arrested a prostitute in her motel room. A consent search of her cellphone showed texts between her and 'Royal.'

"When Vaughn showed up at the motel room, he was arrested. A search of his phone showed that he identified himself as 'Royal.' There were over 1,100 messages between him and the prostitute. These showed that he was acting as her pimp. For example, she told him when she had a date and how much she was charging; sometimes, he told her how much to charge. When she said she was tired and hungry, he replied, '[G]o play the blade and get one more date.'

"The prostitute sent Vaughn photos of herself to be used in ads. Several of these had then been posted in her ad on Backpage.

"2. *Wilkins*.

"In 2013, in San Diego County, Wilkins pleaded guilty to conspiracy to commit prostitution (§ 182, subd. (a)(1)) and loitering with the intent to procure prostitution (§ 653.22, subd. (a)), both misdemeanors.

"These convictions arose out of an incident involving a prostitute called Problemms. Problemms testified at trial, but she was a reluctant witness. She admitted that she was a prostitute, but she testified that Wilkins was not her pimp; he was her boyfriend. He drove her to a hotel for date with a prospective customer; according to Problemms, however, she told him falsely that she was going '[t]o visit a friend.' When they arrived at the hotel, Problemms was arrested.

"Texts and photos on Wilkins's phone indicated that Problemms was a prostitute and he was still acting as her pimp as late as January 2017. She had a tattoo that said, 'POLO wid da izm.' [¶] . . . [¶]." (*Vaughn I*, *supra*, E073346.)

"STATEMENT OF THE CASE

"In a jury trial, Vaughn was found guilty:

"(1) With respect to Jane, of human trafficking of a minor (§ 236.1, subd. (c)(1)), with an enhancement for a prior human trafficking conviction (§ 236.4, subd. (c)); and pimping a minor 16 or older (§ 266h, subd. (b)(1)).

"(2) With respect to Molly, of pimping (§ 266h, subd. (a)) and pandering (§ 266i, subd. (a)(1)).

"Wilkins was found guilty:

"(1) With respect to Jane, of human trafficking of a minor, pimping of a minor 16 or older, and pandering of a minor 16 or older (§ 266i, subd. (b)(1)).

"(2) With respect to Molly, of pimping and pandering.

"(3) With respect to Selena, of pandering.

"(4) With respect to Ebony, of attempted pimping (§§ 266h, subd. (a), 664) and pandering.

"Vaughn was sentenced to a total of 19 years 8 months in prison. Wilkins was sentenced to a total of 18 years in prison." (*Vaughn I*, *supra*, E073346.)

Wilkins' sentence comprised the upper term of 12 years for the violation of section 236.1, stayed the terms for counts 2 and 3 pursuant to section 654, and ordered consecutive terms of one-third the middle term for counts 6, 7, 10 and 11, for a total

8

aggregate sentence of 18 years in prison. Vaughn was sentenced to the upper term for count 4, the violation of section 236.1, with an additional five-year term for the human trafficking prior conviction under section 236.4, stayed the sentence on count 5 pursuant to section 654, and imposed consecutive one-third the middle term for counts 8 and 9, for an aggregate sentence of 19 years, eight months.

## ADDITIONAL HISTORY

Both Defendants appealed their convictions and sentences. On April 18, 2022, we filed our then partially published opinion in the case. (*Vaughn I*, *supra*, E073346.) Pertinent to the issue before us in the current review, we acknowledged in *Vaughn I*, that the trial court had imposed the upper term relying upon facts other than the facts of prior convictions, that had not been found true by proof beyond a reasonable doubt by the jury. We concluded there that "we are certain that, if we were to remand with directions that the only aggravating factor that the trial court could consider was [D]efendants' prior convictions, it would still find that the aggravating circumstances outweigh the mitigating circumstances, and therefore it would still impose the upper term. It follows that "that remand would be an idle act. [Citation.] . . . Under these circumstances, a remand is not required.' (*People v. Flores* (2020) 9 Cal.5th 371, 432.)" (*Vaughn I*, *supra*, E073346.)

Following our affirmance of the sentences, both Defendants petitioned for review in the California Supreme Court, and review was granted (*People v. Vaughn* (2022) 296 Cal.Rptr.3d 648 [2022 Cal. LEXIS 4695; 514 P.3d 233], review granted Aug. 10, 2022, S274644) but briefing and decision were held pending review of a related issue in *Lynch*, *supra*, 16 Cal.5th 730.) On February 26, 2025, the Supreme Court transferred the matter

to this court, with directions to vacate our decision and reconsider the cause in light of *Lynch.* The Supreme Court also ordered that the opinion be "rendered either 'depublished' or 'not citable.'" (*People v. Vaughn* (2025) 329 Cal.Rptr.3d 815 [2025 Cal. LEXIS 1084; 563 P.3d 1111, 1112].)

We requested supplemental briefing from the parties, who have now filed their supplemental briefs, and turn now to the issue.

## DISCUSSION

This appeal involves the 2022 amendment to section 1170, subdivision (b), enacted pursuant to Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3), which went into effect while Defendants' appeals were pending. The amendment came about as a result of the decision in *Cunningham v. California* (2007) 549 U.S. 270, where the United States Supreme Court held that California's procedure for selecting upper term sentences under the then-existing version of section 1170, subdivision (b), violated a defendant's Sixth and Fourteenth Amendment rights to a jury trial because it gave "to the trial judge, not to the jury, authority to find the facts that expose a defendant to an elevated 'upper term' sentence." (*Cunningham*, *supra*, at p. 274.)

The California Legislature responded to the *Cunningham* decision by amending section 1170 in 2007 to provide that the choice between the lower, middle, and upper terms "shall rest within the sound discretion of the court," with the court "select[ing] the term which, in the court's discretion, best serves the interests of justice" and stating reasons for its decision. (*People v. Wilson* (2008) 164 Cal.App.4th 988, 992 (*Wilson*),

citing *Cunningham*, *supra*, 549 U.S. at pp. 292–294; see Stats. 2007, ch. 3, § 1; see also, *People v. Pantaleon* (2023) 89 Cal. App. 5th 932, 936.)

Senate Bill No. 40 (2007-2008 Reg. Sess.) also amended section 1170 in response to "*Cunningham*'s suggestion that California could comply with the federal jury-trial constitutional guarantee while still retaining determinate sentencing, by allowing trial judges broad discretion in selecting a term within a statutory range, thereby eliminating the requirement of a judge-found factual finding to impose an upper term. (*Cunningham*, *supra*, 549 U.S. at pp. 292–294 [166 L.Ed.2d at pp. 876–877]; see Stats. 2007, ch. 3, § 1.) Senate Bill [No.] 40 amended section 1170 so that (1) the middle term is no longer the presumptive term absent aggravating or mitigating facts found by the trial judge; and (2) a trial judge has the discretion to impose an upper, middle or lower term based on reasons he or she states." (*Wilson*, *supra*, 164 Cal.App.4th at p. 992.)

Effective January 1, 2022, Senate Bill No. 567 further amended section 1170, subdivision (b) "to make the middle term the presumptive sentence for a term of imprisonment; a court now must impose the middle term for any offense that provides for a sentencing triad unless "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."" (*People v. Mitchell* (2022) 83 Cal.App.5th 1051, 1057.)

Thus, "[e]xcluding properly proven prior convictions or a defense stipulation, a jury finding is now required for all facts actually relied on to impose an upper term. (See

*Cunningham*, *supra*, 549 U.S. at pp. 281, 288–289.)" (*Lynch*, *supra*, 16 Cal.5th at p. 757.) "'The effect of the 2022 amendment was to embrace *Cunningham*'s first option.' (*Lynch*, *supra*, 16 Cal.5th at p. 748.)" (*Lovelace v. Superior Court* (2025) 108 Cal.App.5th 1081, 1091.)

In the present case, there is no disagreement about retroactive application of the amendment to Defendants' sentences given that their judgments were not final yet when the amendment went into effect. (*Lynch*, *supra*, 16 Cal.5th at pp. 748–749.) In fact, when first faced with the issue raised in supplemental briefing in the original appeal, we acknowledged that the trial considered factors other than facts of or arising from Defendants' prior convictions.

There is also no disagreement that the *Chapman* standard for determining prejudice applies, in light of *Lynch*, *supra*, 16 Cal.5th at pages 742–743. However, there is deep disagreement about whether the error in the present case was harmless beyond a reasonable doubt. The People urge us to find that any reliance on improper aggravating facts was harmless beyond a reasonable doubt. Defendants argue that the trial court's reliance on unproven facts requires reversal under *Chapman*.

In our original opinion, we did not apply a *Chapman* standard of prejudice. Instead, we concluded, "if we were to remand with directions that the only aggravating factor that the trial court could consider was defendants' prior convictions, it would still find that the aggravating circumstances outweigh the mitigating circumstances, and therefore it would still impose the upper term." (*Vaughn I*, *supra*, E073346.)

12

But, as it pertained to both Defendants, the trial court devoted a significant amount of discussion to other unproven factors, such as criminal sophistication and the Defendants' behavior in court. Defendants were not on notice these factors could be used in aggravation of their sentences.[4] As can be seen, the court appears to have given equal weight to proper[5] as well as improper factors where, after discussing factors relating to a grant of probation, the court stated as follows respecting Wilkins:

"[THE COURT:] I'll find with regard to [Wilkins] that although the probation officer indicated there is essentially multiple factors in mitigation, I tend to disagree. I'll find that there are no factors in mitigation with regard to [Wilkins]. [¶] With regard to factors in aggravation, I will find that he has a prior misdemeanor offense of prostitution-related crimes that involved individuals that were ancillary to this case; in other words, this does appear that the conduct in this

---

[4] We recognize that to the extent the jury was able to observe Wilkins' behavior in court during the trial, it might be said that he acquiesced in the jury's consideration of that fact in rendering its verdicts, thereby permitting the court to rely upon that factor. But without advance notice that his behavior could be considered an aggravating factor to impose an upper term sentence, the use of the factor still violates the notice aspect of *Cunningham.*

[5] Neither defendant argues that their prior convictions or conduct on probation or parole were unproven, pursuant to section 1170, subdivision (b)(3), so, as we did in the *Vaughn I, supra*, E073346 we find the trial court properly relied on the aggravating factors related to their prior convictions.

Additionally, we do not discuss the trial court's use of aggravating factors related to the questions of whether Defendants were eligible for probation, or in connection with the decision to impose consecutive terms, where those issues were not presented in this appeal. (See Cal. Rules of Court, rules 4.414(a) & (b), 4.425(a) & (b); *People v. McNiece* (1986) 181 Cal.App.3d 1048, 1058–1060 [grant or deny probation], overruled on a different point in *People v. Flood* (1998) 18 Cal.4th 470, 484; *People v. Shaw* (2004) 122 Cal.App.4th 453, 458 [consecutive vs. concurrent terms].)

case has been a long-term antisocial type of conduct. [¶] Secondly, I do find significant criminal sophistication. In fact, I'll find that this case was more criminally-sophisticated than any other crime that this Court has seen of this nature. The hundreds, if not thousands, of texts and photographs attributed to [Wilkins], I think, are extraordinarily significant, and they, in fact, justify the aggravated sentence in this case."

In imposing the upper term on count 1, we cannot find beyond a reasonable doubt that the improper factors were harmless in the court's decision to impose the upper term as to Wilkins.

Turning to Vaughn, the court found there were no mitigating factors, and then stated:

"[THE COURT:] The factors in aggravation, I find that it was quite striking that part of the People's evidence in this case was [Vaughn] teaching another individual how to pimp, how to aggressively recruit prostitutes on the blade, and he indicated that [Vaughn] does this every time he gets out. I think that is a significant factor in aggravation. [¶] Additionally, [Vaughn] was on a—or he had recently been convicted and violated on his probation for sex trafficking of children close in time to the commission of the current offense. As such, I do find factors in aggravation."

The court thereafter imposed the upper term on count 4 as to Vaughn. In our view, the trial court's decision to impose the upper term sentences for Vaughn and

14

Wilkins was based in significant part on factors that violate *Cunningham* in that the trial judge, not the jury, found facts that exposed the defendants to the upper term in violation of the defendants' Sixth and Fourteenth Amendment rights to a jury trial. (*Cunningham*, *supra*, 549 U.S. at p. 274.) "[U]nder the current statute a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established." (*Lynch*, *supra*, 16 Cal.5th at p. 768.)

*Lynch* also held that "The violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements. If the reviewing court cannot so determine, applying the *Chapman* standard of review, the defendant is entitled to a remand for resentencing." (*Lynch*, *supra*, 16 Cal.5th at p. 768.)

Because the trial court emphasized both the Defendants' criminal histories, an arguably proper factor in aggravation, and certain unproven aggravating facts, and because the trial court did not have the benefit of the recent decision in *Lynch*, *supra*, 16 Cal.5th 730 for guidance, we cannot find beyond a reasonable doubt that a jury would have found true all the aggravating facts relied upon by the trial court to justify an upper term sentence. (*People v. Gonzalez* (2024) 107 Cal.App.5th 312, 332.)

For this reason, the sentences must be reversed and the matter must be remanded for a full resentencing. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.)

15

**DISPOSITION**

The convictions are affirmed but the sentences are reversed, and the matter is remanded to the superior court for a full resentencing consistent with section 1170, subdivision (b).

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

FIELDS
J.

16